The EAST GRAND COUNTY SCHOOL DISTRICT NO. 2; the Board of Education of the East Grand County School District No. 2; the Board of County Commissioners of the County of Grand; Jack Randall; Medill McBarnes; Robert L. Busse; Steven M. Sharp; R. Frank Norton; Richard R. Mulligan; and Jane O. Smith, Plaintiffs-Appellees,

v.

The TOWN OF WINTER PARK, a Home Rule Town; the Town Council of the Town of Winter Park; and the Winter Park Development Authority, Defendants-Appellants.

No. 86CA0479.

Colorado Court of Appeals, Div. I.

Feb. 19, 1987.

Rehearing Denied March 26, 1987.

Certiorari Denied (Winter Park) July 27, 1987.

Calkins, Kramer, Grimshaw & Harring, James S. Bailey, Jr., Charles B. Hecht, Denver, for plaintiffs-appellees.

Windholz, Williams and Haddock, Kathleen E. Haddock, James A. Windholz, Boulder, for defendants-appellants.

PIERCE, Judge.

Defendants are the Town of Winter Park, the town council, and the Winter Park Development Authority. They appeal from a partial summary judgment entered in favor of plaintiffs, East Grand County School District, the Board of Education, and the Board of County Commissioners. We affirm.

In January 1983, the Winter Park Town Council determined that certain areas within the town of Winter Park were blighted and in need of urban renewal. It then established a development authority to proceed with the implementation of an urban renewal project.

In 1984, the development authority adopted a Downtown Plan for improvement projects which contemplated the use of

property tax increment financing. This plan was subsequently approved by the Winter Park Planning Zoning Commission.

The town council then formulated a proposed ordinance No. 116, which incorporated certain factual findings required by § 31–25–107(4), C.R.S. (1986 Repl.Vol. 12B) as a condition to the final approval of the plan. However, in June 1984, the town council declined to act on ordinance No. 116, and instead, adopted a resolution which submitted the urban renewal plan proposed by No. 116 to the voters at a special election.

In July 1984, the special election was held, and the urban renewal issue was approved. Thereafter, on August 7, 1984, the town council passed resolution No. 178, which adopted the Downtown Plan as approved by the voters at the special election. However, at no time did the town council make the findings which had been incorporated into proposed ordinance No. 116.

Plaintiffs then commenced this action, seeking injunctive and declaratory relief. The trial court granted partial summary judgment in favor of plaintiffs, finding that the urban renewal plan, as enacted, did not comply with § 31–25–107, and that the town council had exceeded its jurisdiction. Accordingly, the trial court found that the Downtown Plan was void.

## I.

Defendants first contend that plaintiffs lack standing. We disagree.

In order to have standing, a plaintiff must suffer an injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). In determining whether a plaintiff has suffered an injury in fact, a court must first look to the complaint and accept all allegations of material fact as true. *State Board of Community Colleges v. Olson,* 687 P.2d 429 (Colo.1984).

## A.

First, we must inquire into whether the plaintiffs will arguably suffer an injury in

fact should the renewal plan be implemented. *See Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374 (Colo.1980).

To resolve this issue, an analysis of tax increment financing is necessary. Such financing is accomplished by first establishing a base amount upon which the various taxing authorities assess and collect their levies. This base amount is determined by assessing the value of the property within the urban renewal area prior to adoption of the urban renewal plan. Thereafter, the property is reassessed in subsequent years for tax purposes in the hopes that the urban renewal plan has increased its value. After all levies are assessed and collected on the subsequent valuation, any incremental increase in the base amount is deemed the result of the urban redevelopment efforts by the municipality and is distributed to the urban renewal authority. *See* § 31–25–107(9), C.R.S. (1986 Repl.Vol. 12B).

Plaintiffs, here, allege that as a result of the Downtown Plan, they will be "forced to raise their tax rates, or to curtail services in order to accommodate the loss of property tax revenue which would otherwise have been available." This allegation is further supported by the School District's claim that it previously had issued bonds based upon projections of increased assessed valuations. Plaintiffs have further alleged that assessed valuation of property within the urban renewal area, and consequently property tax revenues, were increasing absent urban renewal. Thus, because the base amount for tax purposes would be established while valuations are increasing, the implementation of tax increment financing would operate to divert to the urban renewal authority some tax revenues that have not been generated as a result of the renewal project. This will cause plaintiffs to lose property tax revenues which would otherwise be available to them. Therefore, the trial court was correct in ruling that plaintiffs will arguably suffer an injury in fact.

## B.

Next, we must determine whether plaintiffs' injury is legally protected. In *Clover-*

*leaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980), the Supreme Court provided the following guidelines to use in such a determination:

(1) Whether the statute creates a right in favor of plaintiffs;

(2) Whether there is any indication of legislative intent to create a remedy or deny one; and

(3) Whether an implied remedy is consistent with the purpose behind the legislative scheme.

An application of these factors establishes plaintiffs' legally protected interest in this case.

Section 39–1–111(1), C.R.S. (1986 Cum. Supp.) empowers counties to levy property taxes against all property located in the county. Section 30–11–101(1)(a), C.R.S. (1986 Repl.Vol. 12A) further authorizes a county to sue to protect this interest. Additionally, § 31–25–107(9)(d), C.R.S. (1986 Repl.Vol. 12B) entitles an affected school district to participate in an advisory capacity with respect to the implementation of tax increment financing in an urban renewal project. Accordingly, we find an implicit indication in the legislative scheme to afford such a district a remedy. *See Board of County Commissioners v. Denver Board of Water Commissioners,* 718 P.2d 235 (Colo.1986).

Accordingly, we conclude the plaintiffs have standing to bring this suit, and turn to the merits of the case.

## II.

Section 31–25–107(3), C.R.S. (1986 Repl. Vol. 12B) requires that the governing body hold a public hearing on an urban renewal plan. Section 31–25–107(4) further requires the governing body to make specific findings before it approves any urban renewal plan. The parties here agree that the governing body of Winter Park has the responsibility of satisfying these statutory requirements.

Defendants, however, assert that Winter Park is a home rule city and that its city charter authorizes the town council to submit any proposed ordinance to a vote of the electors. In such a case, it is argued, the electorate becomes the governing body for purposes of § 31–25–107. We disagree.

The Winter Park Home Rule Charter § 3.5 provides that:

"The council shall be the ... governing body of the town and shall exercise, except as otherwise provided in this charter, all powers conferred upon or possessed by the town...."

The Winter Park Home Rule Charter § 5.7 provides that:

"The Council, on its own motion, shall have the power to submit ... any proposed ordinance or any question to a vote of the electors."

Contrary to defendants' assertion, the act of submitting a proposed ordinance to the electorate does not divest the town council of its status as governing body. Rather, the submission of any question to the voters is an exercise of its power as the governing body. This being so, the submission to the electorate does not excuse the town council from complying with the requirements of § 31–25–107.

## III.

Section 31–25–107(4) provides that:

"Following such [public] hearing, the governing body may approve an urban renewal plan if it finds that:

(a) A feasible method exists for the relocation of individuals and families who will be displaced by the urban renewal project in decent, safe, and sanitary accommodations within their means and without undue hardship to such individuals and families;

(b) The urban renewal plan conforms to the general plan of the municipality as a whole; and

(c) The urban renewal plan will afford maximum opportunity, consistent with the sound needs of the municipality as a whole, for the rehabilitation or redevelopment of the urban renewal area by private enterprise."

In a joint stipulation of fact, Winter Park acknowledged that the town council did not make these statutory findings prior to re-

ferring the issue to the electorate. Despite this stipulation, defendants argue that the necessary findings were implicitly made subsequently by its action in approving the election results. We disagree.

■ To satisfy the requirements of § 31–25–107(4), the need for an urban renewal plan must be determined prior to its adoption. To hold otherwise would circumvent the legislative intent underlying the statutory requirement for the specified findings. Therefore, we hold that the approval of the election results without the necessary findings did not excuse the town council's failure to comply with the statute.

## IV.

Defendants further contend that C.R. C.P. 106(a)(4) is plaintiffs' exclusive remedy and that, therefore, plaintiffs' failure to file a complaint within the specified time period bars their action.

■ We need not reach this issue because, even if C.R.C.P. 106(a)(4) were an exclusive remedy here, the complaint was filed timely. It was defendants' act of attempted ratification by approval of the election results which plaintiffs sought to have reviewed. This act took place on August 7, 1984, and therefore, the filing of plaintiffs' complaint on September 6, 1984, was within the 30–day requirement of C.R. C.P. 106. *See Gold Star Sausage Co. v. Kempf*, 653 P.2d 397 (Colo.1982).

## V.

Defendants' remaining contentions are without merit.

Judgment affirmed.

TURSI and CRISWELL, JJ., concur.