865 P.2d 862 (1993)
CENTRAL BANK DENVER, N.A., formerly Central Bank of Denver, Plaintiff-Appellant,
v.
MEHAFFY, RIDER, WINDHOLZ & WILSON, attorneys at law; John R. Mehaffy; James A. Windholz; James A. Windholz, P.C.; O'Connor & Hannan, attorneys at law; Arnold R. Kaplan, Defendants-Appellees.
No. 92CA0736.
Colorado Court of Appeals, Div. II.
April 22, 1993.
Rehearing Denied June 3, 1993.
Certiorari Granted January 4, 1994.
*863 John E. Bush, P.C., John E. Bush, Denver, for plaintiff-appellant.
Faegre & Benson, Michael S. McCarthy, Charlotte Wiessner, Denver, for defendants-appellees Mehaffy, Rider, Windholz & Wilson and John R. Mehaffy.
Montgomery Little Young Campbell & McGrew, P.C., Brian K. Stutheit, Zion Avdi, Englewood, for defendants-appellees James A. Windholz and James A. Windholz, P.C.
Holland & Hart, William C. McClearn, Charles M. Johnson, J. Kevin Bridston, Denver, for defendants-appellees O'Connor & Hannan and Arnold R. Kaplan.
Opinion by Judge RULAND.
Plaintiff, Central Bank Denver (Bank), appeals from the dismissal of its claims against the law firms of Mehaffy, Rider, Windholz & Wilson and O'Connor & Hannan, its claims against individual attorneys John R. Mehaffy, James A. Windholz, and Arnold R. Kaplan, and its claims against James A. Windholz, P.C. We affirm in part, reverse in part, and remand for further proceedings.
As pertinent here, the record on appeal consists of the Bank's complaint, motions to dismiss by defendants together with supporting and opposing briefs as well as three affidavits and copies of certain documents. Because information outside the pleadings was submitted to the trial court in conjunction with its ruling, we consider the dismissal to be a summary judgment. See C.R.C.P. 12(c).
The complaint alleges the following sequence of events which are not controverted at this stage of the proceeding. In 1983, the Town of Winter Park (Town) formed the Winter Park Redevelopment Authority (Authority) to construct various urban renewal projects which were to be funded through tax increment financing. A municipal parking garage was the first project contemplated by the Authority.
The Authority issued $4 million in notes to finance the garage. The underwriter for the project contacted the Bank to determine if the Bank was interested in purchasing the notes. A meeting of the Town Council, the Authority, and the Bank was held to discuss the Bank's interest in purchasing the notes. However, before any agreement was reached, the East Grand County School District and others initiated litigation challenging the Authority's adoption and implementation of its urban renewal plan. The underwriter informed the Bank that the lawsuit had been filed, and the Bank responded that it would not purchase the notes if there was any significant risk that the school district would prevail in the litigation.
According to the complaint, the underwriter assured the Bank that it need not be concerned about the litigation and suggested that bond counsel, O'Connor & Hannan, and counsel for the Town, Mehaffy, Rider, Windholz & Wilson, be contacted to confirm that the litigation had no merit. The underwriter also assured the Bank that "no merit" opinion letters would be issued by counsel.
The Bank alleges that it contacted Arnold R. Kaplan and that Kaplan assured the Bank that the "no merit" opinion would be issued only if counsel was certain that the school district would not prevail. According to the Bank, Kaplan represented that he had independently reviewed "all matters" pertinent to the school district's claims and that he would not issue his firms' opinion as bond counsel unless he was convinced that the 1984 Notes were valid.
*864 Shortly thereafter, the Authority issued $4 million in notes (1984 Notes) to finance the project. The Bank purchased the notes through the underwriter. At or before closing, the Bank was furnished with the legal opinions of bond counsel and counsel for the Town.
In February of 1985, while the school litigation was pending, the Authority issued refunding notes (1985 Notes) to the Bank in the amount of $4.5 million to retire the 1984 Notes. With the issue of the 1985 Notes, the Bank alleges that Mehaffy and Kaplan made representations which were similar in content and form to their prior opinions.
In addition, Windholz, who had been retained by the Authority to defend it in the school district litigation, provided a letter to Kaplan and the Bank stating his opinion, among other things, that the Town and the Authority had adopted the urban renewal plan in accordance with "the requirements of the laws of Colorado." The letter also states that insofar as the school district's complaint questions the adoption of the urban renewal plan or the determination that the project area constituted a "blighted area," in his opinion the school district's allegations are without merit.
In April of 1985, the school district's litigation against the Authority was dismissed on a motion for summary judgment. However, in June, the trial court withdrew its summary judgment order in response to a motion filed by the school district for reconsideration of its decision.
While reconsideration of the issues was pending, the Bank purchased Winter Park Development Authority Tax Increment Refunding and Improvement Bonds, Series 1985A (1985A Bonds) in the amount of $5,015,000 which were issued by the Authority to retire the 1985 Notes. Defendants issued opinion letters similar to those they had provided earlier.
In March of 1986, the trial court granted the school district's motion for summary judgment, declared the Authority's urban renewal plan void, and enjoined both the Town and the Authority from taking any action to implement the plan. This court affirmed the trial court's decision in East Grand County School District No. 2 v. Winter Park, 739 P.2d 862 (Colo.App.1987). As a consequence, no tax revenue was available to repay the Series 1985A Bonds.
The Bank commenced this action against the Town, the Authority, and the attorneys. The complaint alleged various claims against the attorneys. With reference to its negligent misrepresentation claim, the Bank alleged that defendants had made misstatements of material fact and had omitted material facts in their oral and written communications. The Bank further alleged that the attorneys knew the Bank was relying upon defendants to exercise reasonable care in obtaining, reviewing, analyzing, and communicating with the Bank regarding the investments.
The trial court dismissed the claims concluding that there was no basis for liability because it was undisputed that the Bank had not entered into an attorney-client relationship with any of the attorneys. The dismissal was made final pursuant to C.R.C.P. 54(d). While the Bank appeals from the dismissal of all of its claims, the argument for reversal is predicated upon the tort of negligent misrepresentation. We therefore address that claim only.

I
The Bank contends that the trial court erred in dismissing its claim for negligent misrepresentation. We agree.
In a series of opinions from this court addressing attorney liability to a non-client, we have declined to impose liability absent a finding of fraud or malicious conduct. See Schmidt v. Frankewich, 819 P.2d 1074 (Colo. App.1991); McGee v. Hyatt Legal Services, Inc., 813 P.2d 754 (Colo.App.1990); Weigel v. Hardesty, 37 Colo.App. 541, 549 P.2d 1335 (1976). The only opinion to address the tort claim of negligent misrepresentation was Montano v. Land Title Guarantee Co., 778 P.2d 328 (Colo.App.1989). There, citing Weigel v. Hardesty, supra, the dismissal of a claim by a third-party against an attorney was affirmed. However, we do not consider that holding dispositive here.
*865 In Montano, in connection with a real estate transaction, an attorney, solely for the purpose of protecting his client, directed an employee of a title insurance company to record a certain deed. A third-party who sustained damages as a result of the recording sought recovery from the employee and the title insurance company. The company and its employee filed a third-party complaint against the attorney on a negligent misrepresentation theory.
Because the attorney was acting solely on behalf of his client at the time he requested that the deed be recorded, and because there was no evidence of fraud or malicious acts on his part, this court determined that the third-party claim for negligent misrepresentation was properly dismissed. It was unnecessary to, and this court did not address, whether a different rule might apply in conjunction with the issuance of a legal opinion on behalf of a client for the benefit of the client and a third person.
In First National Bank v. Collins, 44 Colo. App. 228, 616 P.2d 154 (1980), this court adopted Restatement (Second) of Torts § 552 (1976) as applicable in this jurisdiction. That Restatement section provides:
(1) One who, in the course of his business profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) [T]he liability stated in subsection (1) is limited to loss suffered (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it....
The tort of negligent misrepresentation has also been recognized by our supreme court. See Keller v. A.O. Smith Harvestore Products, 819 P.2d 69 (Colo.1991); Western Cities Broadcasting, Inc. v. Schueller, 849 P.2d 44 (Colo.1993).
Here, the narrow issue we consider is whether liability under Restatement § 552 may attach to an attorney who issues a legal opinion which contains misstatements of material fact or omits material facts when the opinion is issued on behalf of a client for the purpose of inducing a non-client to rely on the opinion in conjunction with purchase of municipal notes or bonds. We hold that a non-client may assert a claim for negligent misrepresentation in this context.
Written legal opinions constitute an integral component of a wide variety of corporate, commercial, and financing transactions. These types of opinions are often required as a condition precedent to closing a transaction, and the purpose in many cases is to provide contracted for assurances to a nonclient. See Note, Attorney Liability to Third-Parties for Corporate Opinion Letters, 64 B.U.L.Rev. 415 (1984).
As noted in Montano, supra, an attorney's liability to a non-client has previously been limited to cases involving fraud or malice because of the attorney's duty of loyalty and effective advocacy to a client and because the potential liability might accrue to an unlimited number of third parties. Here, however, it is undisputed that the Bank has requested issuance of the opinion letters and that the client authorized such. Conversely, the potential liability is limited to those for whose benefit the letters were prepared.
Given these considerations, and given the fact that other professionals in this jurisdiction may be subjected to liability to third persons for negligent misrepresentation, we are unable to conclude that attorneys should enjoy an immunity from such claims. Instead, we consider this theory of recovery proper in such circumstances because counsel knows the purpose of the legal opinion and also knows or should know that it will be relied upon by the non-client as a basis for closing the transaction. See Wolther v. Schaarschmidt, 738 P.2d 25 (Colo.App.1986) (engineer retained on behalf of appraiser for lender to inspect premises may be liable for negligent misrepresentation to borrower); see also Marquest Medical Products, Inc. v. Daniel, McKee & Co., 791 P.2d 14 (Colo.App. 1990) (implicitly recognizing that a certified public accountant may be liable for negligent *866 misrepresentation relative to financial information concerning a client that is furnished to a third person).
We also find support for the conclusion we reach here in the decisions of other jurisdictions which have adopted the tort of negligent misrepresentation in similar contexts. See Molecular Technology Corp. v. Valentine, 925 F.2d 910 (6th Cir.1991) (applying Michigan Law); Horizon Financial v. Hansen, 791 F.Supp. 1561 (N.D.Ga.1992) (applying Georgia and Pennsylvania law); Onita Pacific Corp. v. Trustees of Bronson, 315 Or. 149, 843 P.2d 890 (1992); see also Vereins-Und Westbank v. Carter, 691 F.Supp. 704 (S.D.N.Y.1988); Annot., 61 A.L.R. 4th 615 (1988).

II
In the alternative, defendants contend that the trial court's ruling was correct because the documents represent opinions as to the law. Relying upon Chacon v. Scavo, 145 Colo. 222, 358 P.2d 614 (1960), defendants argue that there can be no liability for rendering a legal opinion. We find no merit in this contention.
In Chacon, the plaintiffs had entered into a contract to acquire building sites, but zoning restrictions precluded construction of residences on the sites. Claiming that defendants misrepresented whether residences could be constructed on the sites, plaintiffs brought suit on the contract. In affirming the trial court's dismissal of plaintiff's claims, the court held that plaintiffs could not rely upon representations of what the law will permit because the accuracy of the representation can be tested by ordinary vigilance. See Two, Inc. v. Gilmore, 679 P.2d 116 (Colo. App.1984).
Here, however, the written statements of the attorneys may not properly be characterized solely as representations concerning the meaning of the applicable laws. For example, the letters recite that the urban renewal plan was duly adopted by the Town in accordance with all requirements of law and that the Town determined that the urban renewal area constituted a "blighted area" within the meaning of the Act. The letters further recite that the plaintiffs in the school district litigation had alleged facts in their complaint that were insufficient to permit them to prevail in court and that such allegations were substantially without merit.
As pointed out in East Grand County School District v. Town of Winter Park, supra, however, the factual findings statutorily required for issuance of the bonds here were not made by the town council prior to submission of the issue of forming the authority to the electorate. Hence, the statements of the attorneys that the urban renewal plan had been adopted in accordance with all legal requirements may constitute a misrepresentation of material fact sufficient upon which to base defendants' liability. See Feit v. Donahue, 826 P.2d 407 (Colo.App. 1992) (failure to disclose a condition imposed upon a certificate of occupancy is a misrepresentation of fact and not law).

III
Defendants next contend that the trial court's ruling should be affirmed because of a so-called "comfort letter" issued by the Bank to the Authority, the Town, and bond counsel after the opinion letters were issued. Again, we disagree.
In the opening paragraphs of the letter as well as in the caption designating a topic of the correspondence, the Bank's letter addresses the "tax increment refunding and improvement bonds." (emphasis supplied) In the body of the letter, there is no specific reference to the opinion of counsel. Instead, reference is made generically to questions and answers from representatives of the "issuer" concerning the terms and conditions of the "offering."
In the concluding paragraph of the letter, the document recites:
It is understood that the Original Purchaser [the Bank] has undertaken to verify the accuracy, completeness and truth of any statements ... concerning any of the material facts relating to this transaction.... The Original Purchaser has conducted its own investigation to the extent it believes necessary. The Original Purchaser has been offered an opportunity to have made available to it any and all such information it might request from the Issuer. On this *867 basis the Original Purchaser agrees that it is not relying on any other party or person to undertake the furnishing or verification of information relating to this transaction. (emphasis supplied)
In our view, material issues of fact appear from the comfort letter which preclude entry of summary judgment. For example, we cannot determine from the limited record whether "this transaction" refers only to the bond issue, or whether it refers as well to the 1984 and 1985 Notes. The letter is also ambiguous as to whether the legal opinion letters are indeed excluded because the referenced investigation by the Bank was limited to the extent believed necessary and the decision not to conduct further investigation may have been influenced by those opinion letters.
In their motions to dismiss, defendants also contended that the Bank's claims were barred by the statute of limitations. The trial court did not rule on this affirmative defense. Defendants do not reassert that contention here, and thus, we do not address it.
That part of the judgment dismissing the Bank's claim for negligent misrepresentation is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion. That part of the judgment dismissing the Bank's other claims is affirmed.
SMITH, J.[*], concurs.
TURSI, J., dissents.
Judge TURSI, dissenting.
I respectfully dissent.
Initially, it is undisputed that at no time did the Bank and any of these defendants enter into an attorney-client relationship. Nor is it alleged that there were acts of attorney fraud or malicious conduct relied upon by the Bank. Therefore, under existing Colorado law, the Bank has not stated a claim against these defendants. See Montano v. Land Title Guarantee Co., 778 P.2d 328 (Colo.App.1989); Weigel v. Hardesty, 37 Colo.App. 541, 549 P.2d 1335 (1976).
Secondly, even if I were to accept the view that the tort of negligent misrepresentation should apply to attorneys, I would, nevertheless, conclude that the Bank cannot prevail on such theory.
It is undisputed that the letters submitted by the attorneys clearly stated that it was only their respective opinions that the authority was duly appointed and that the urban renewal plan was duly passed. At no time did they misstate facts present or past. Rather, in hindsight, it developed that the facts relied upon were deemed to be legally insufficient to sustain their opinions. Hence, inasmuch as it is generally held that a party who relies on a representation of law does so at its own risk, see Chacon v. Scavo, 145 Colo. 222, 358 P.2d 614 (1960), particularly when, as here, that party is an experienced bank and capable of obtaining counsel of its own, City National Bank v. Rodgers & Morgenstein, 155 Mich.App. 318, 399 N.W.2d 505 (1986), the Bank's claim of negligent misrepresentation, even if it is a proper theory of recovery, must fail.
Next, even after giving all deference accorded by the majority to the "comfort letter," I am unable to interpret it as anything other than a clear, unequivocal disclaimer by the Bank that it relied on any party but itself. Further, the record does not, as the majority conjectures, disclose any other transactions to which it might apply, nor does the Bank dispute the authority of the author vice-president to issue the disclaimer. Hence, as a matter of law, I would construe this unretracted letter as a disclaimer of the element of reliance, an element necessary to sustain the Bank's theory of negligent misrepresentation.
And, finally, although raised by these defendants, the trial court did not address the statute of limitations bar as to plaintiff's claims, nor did the defendants raise the issue before this court. Nevertheless, the record contains apparently undisputed facts supporting this alternative ground submitted in defendants' motion for summary judgment. See § 13-80-102, C.R.S. (1987 Repl.Vol. 6A). In the trial court, the Bank's argument *868 against this ground for summary judgment was based upon a legal argument. That argument was subsequently rejected by the trial court as it applied to the Town and the Authority. Similarly, I would reject the Bank's argument as it may apply to these defendants.
Therefore, I would either affirm the judgment of the trial court on the grounds relied upon by the trial court or in the interest of judicial economy, affirm the judgment for the defendants on the record as it relates to the statute of limitations bar.
NOTES
[*] Sitting by assignment of the Chief Justice under provisions of the Colo.Const. art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).