**BOARD OF COMMISSIONERS OF the COUNTY OF BOULDER, Plaintiff–Appellee and Cross–Appellant,**

v.

**CITY OF BROOMFIELD, Colorado; City Council of the City of Broomfield; and Broomfield Urban Renewal Authority, Defendants–Appellants and Cross–Appellees.**

No. 98CA0836.

Colorado Court of Appeals, Div. V.

Nov. 12, 1999.

As Modified on Denial of Rehearing Dec. 27, 1999.

Certiorari Granted Sept. 11, 2000.

H. Lawrence Hoyt, Boulder County Attorney, Boulder, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Roy S. Howard, Broomfield City Attorney, Broomfield, Colorado, for Defendants–Appellants and Cross–Appellees City of Broomfield, Colorado, and City Council of the City of Broomfield.

Paul C. Benedetti, Boulder, Colorado, for Defendant–Appellant and Cross–Appellee Broomfield Urban Renewal Authority.

Arnold & Porter, Eugene L. Hohensee; Mark H. Boscoe; Gregory E. Goldberg; and Peter J. Krumholz, Denver, Colorado, for Amicus Curiae Colorado Community Revitalization Association.

Geoffrey T. Wilson, Denver, Colorado, for Amicus Curiae Colorado Municipal League.

Opinion by Judge DAVIDSON.

Defendants, City of Broomfield, City Council of the City of Broomfield, and Broomfield Urban Renewal Authority (BURA), appeal from the trial court's determination that the urban renewal plan proposed by BURA and approved by the City was void for lack of compliance with statutory requirements. We reverse and remand for dismissal of the complaint.

On September 12, 1995, the Broomfield City Council received a report on the results of a blight survey of an area within the city. On the basis of that report, the City determined that the area was blighted and directed that an urban renewal plan be prepared as provided for under § 31–25–101, et seq., C.R.S.1999.

The City Council then held a public hearing on the proposal to create such a plan. Following the hearing, the proposal was tabled. At the next council meeting, the plan was approved.

The Board of Commissioners of the County of Boulder (BOCC), along with Adams County, the commissioners of Boulder and Adams Counties, in their official and individual capacities, and an individual taxpayer (plaintiffs), filed suit against defendants, al-

leging that the urban renewal plan did not comply with the requirements of § 31–25–101, et seq., that the plan violated Colo. Const. art. X, § 20, The Taxpayers' Bill of Rights (TABOR), and that, under TABOR, the plan, because it involved a tax policy change, should have been put to a vote of the electorate. Defendants asserted that the plaintiffs lacked standing because they had not asserted an injury in fact to a legally protected interest and also lacked standing to assert claims under TABOR.

Upon cross-motions for summary judgment, the trial court determined that, because the City Council had provided notice and held a hearing as required under § 31–25–107(3), C.R.S.1999, its actions in finding that the area was blighted and in approving the renewal plan were quasi-judicial and, therefore, the claims would be reviewed under C.R.C.P. 106(a)(4). The court also determined that plaintiffs had standing to challenge the validity of the plan because they had alleged an injury in fact resulting from a loss of increased property tax revenues and had asserted a legally protected interest under § 31–25–107(3.5), C.R.S.1999. Further, the court determined, plaintiffs had standing under TABOR to challenge the approval and implementation of the plan.

Subsequently, all plaintiffs except the BOCC were dismissed from the action.

After considering the briefs and motions submitted by the parties, the court, applying the standard of review under C.R.C.P. 106(a)(4), determined that competent evidence existed to support defendants' determination that the area was blighted, that the urban renewal plan was sufficiently complete under § 31–25–103, C.R.S.1999, and that the area did not consist of open land and, therefore, was not subject to the requirements of §§ 31–25–107(5) and 31–25–107(6), C.R.S. 1999.

However, the court also determined that no competent evidence existed to support the findings that defendants had complied with the statutory requirements of § 31–25–107(3.5) and that the plan complied with the statutory requirements for approval of an urban renewal plan. Therefore, the court determined, the plan was void.

On appeal, defendants contend that the BOCC lacks standing to bring claims under either § 31–25.107(3.5) or TABOR. The BOCC argues that it has alleged an injury in fact to a legally protected interest under § 31–25–107(3.5) and that it also has standing under TABOR to bring this action either in its own right or on behalf of its taxpayers. We agree with defendants.

■ Standing involves a consideration of whether a plaintiff has asserted a legal basis upon which a claim for relief may be predicated. *Romer v. Board of County Commissioners*, 956 P.2d 566 (Colo.1998).

■ In order to establish standing, a plaintiff must allege an injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977).

■ In making this determination, a court must accept as true all the allegations of material fact as presented in the complaint. *State Board for Community Colleges & Occupational Education v. Olson*, 687 P.2d 429 (Colo.1984).

A.

The BOCC argues that it has alleged an injury in fact to a legally protected interest under § 31–25–107(3.5). We disagree.

1.

The BOCC, relying on *East Grand County School District No. 2 v. Town of Winter Park*, 739 P.2d 862 (Colo.App.1987), asserts that the increased value in the renewal area under defendants' tax increment plan for financing the renewal plan would be attributable in part to an increase in property values in general, and that the resultant increase in tax revenues ordinarily would be paid to the county. However, the BOCC argues, because, under the plan, the increase in property values is presumed to be generated by the renewal plan and the increased tax revenues would be paid to the renewal authority, the county is deprived of income that it otherwise would receive. Therefore, the BOCC

claims, it has asserted an injury in fact that would result from implementation of the renewal plan. We disagree.

In *East Grand County School District No. 2 v. Town of Winter Park, supra,* a division of this court determined that the plaintiffs had asserted an injury in fact because they would have to raise their tax rates or curtail services to make up for a loss of property tax revenue that would go to the urban renewal authority instead of to them. The plaintiffs predicated their projected loss on the fact that property values were increasing even before the plan was to be implemented and would continue to increase during its implementation. Therefore, they argued, the increase to the base property value did not result solely from implementation of the renewal plan and, thus, granting the renewal authority the additional tax revenues deprived plaintiffs of tax revenues that belonged to them.

Previously, however, in *Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374 (Colo.1980), the supreme court determined that, as a matter of law, the tax allocation plan under § 31–25–107(9), C.R.S.1999, and as proposed by the Denver Urban Renewal Authority for financing its proposed renewal project, had been carefully drafted to provide a direct relationship between an increase in the valuation of property within the renewal area and the increase in revenues that would be paid to the project as set forth under § 31–25–107(9). On that basis, the court determined that, contrary to its argument in support of invalidating the plan, Denver could not lose any benefit of property tax revenues which otherwise would have been available to it had the plan never been adopted.

▪ Similarly, here, defendants' plan calls for financing the renewal project under the provisions of § 31–25–107(9). Further, § 31–25–107(9)(e), C.R.S.1999, expressly provides for a proportional adjustment of the amount to be paid to a renewal authority in the event of a general reassessment of taxable property valuations. Therefore, if property values are reassessed, the valuation of property within the renewal area is proportionately readjusted and, thus, revenues from

such increases are paid to the county. Only the increases in the value of a property over the assessed base values go to the renewal authority. Thus, the tax increment allocation plan developed by the renewal authority under § 31–25–107(9) simply does not deprive counties of their property tax revenue. *See Denver Urban Renewal Authority v. Byrne, supra* (fiscal base of taxing entities not impaired by tax allocation scheme under § 31–25–107(9)(e)).

Therefore, we conclude as a matter of law that the county is not deprived of property tax revenues to which it claims it is entitled and, thus, the BOCC has not alleged an injury in fact that would allow it to maintain its claims.

To the extent our determination conflicts with the holding in *East Grand County School District No. 2 v. Town of Winter Park, supra,* we decline to follow it.

2.

We also conclude that the BOCC's claimed injury in fact, if there were one, would not be to a legally protected interest.

Under § 31–25–107(3.5):

Prior to the approval of an urban renewal plan, the governing body shall submit such plan to the board of county commissioners, which shall include, at a minimum, the following information concerning the impact of such plan:

(a) The estimated duration of time to complete the urban renewal project;

(b) The estimated annual property tax increment to be generated by the urban renewal project and the portion of such property tax increment to be allocated during this time period to fund the urban renewal project;

(c) Any other estimated impacts of the urban renewal project on county services or revenues.

The BOCC argues that, because § 31–25–107(3.5) requires that the urban renewal plan be submitted to it prior to its approval, and that such plan must inform the county of estimated impacts concerning time, cost, and other material factors, it necessarily has been

granted an advisory role in the renewal process and the financing of the plan. Therefore, the BOCC argues, standing is conferred on it under the statute in the same way it was on the plaintiffs in *East Grand County School District No. 2 v. Town of Winter Park, supra.*

■ However, unlike § 31–25–107(9)(d), C.R.S.1999, which expressly conferred an advisory role on the local school board, § 31–25–107(3.5) contains no such language. This provision does no more than require that certain information be supplied to the board of county commissioners of each county that could be affected by such plan. It does not grant any authority to take any action, to participate in the planning process, or to implement the plan in any way other than that granted to the general public to receive notice and participate in a public hearing. And, for the same reasons, we do not read the statute to imply a grant of authority to the county to assume an advisory role.

### B.

The BOCC contends, in the alternative, that it has standing under TABOR because the plain language of the constitution provides a means for taxpayers to enforce its provisions. It is undisputed that the BOCC is not a taxpayer. However, the BOCC argues, because it is not expressly precluded from bringing this suit and because it is acting on behalf of the taxpayers, it has standing to act in this representative capacity. We are not persuaded.

■ In construing Colo. Const. art. X, § 20, a reviewing court must take into account what people believed the amendment to mean when it was accepted as fundamental law. *Havens v. Board of County Commissioners,* 924 P.2d 517 (Colo.1996).

■ Courts should not engage in a narrow and technical reading of the language contained in an initiated constitutional amendment if to do so would defeat the intent of the people. If the language of an amendment is not clear as to the intent of the electorate, then the court should construe the amendment in light of the objective sought to be achieved and the mischief to be avoided. *Zaner v. City of Brighton,* 917 P.2d 280 (Colo.1996).

■ The principal purpose of TABOR is to limit the spending and taxing power of state and local governments by providing taxpayers with greater direct control over government growth. *Zaner v. City of Brighton, supra.* TABOR requires voter approval of any proposed tax increase and grants taxpayers the right to enforce its provisions. *Property Tax Adjustment Specialists, Inc. v. Mesa County Board of Commissioners,* 956 P.2d 1277 (Colo.App.1998); *cf. City of Wheat Ridge v. Cerveny,* 913 P.2d 1110 (Colo.1996) (TABOR facilitates taxpayer suits to enforce compliance with the purpose of restraining governmental growth). Thus, TABOR was intended to confer standing on taxpayers to bring suits to enforce the rights granted by its provisions.

■ If a statute or an amendment expressly designates those who may bring an action, only those so designated have standing to do so. *Tenney v. Board of Assessment Appeals,* 856 P.2d 89 (Colo.App.1993).

■ Here, the plain language of TABOR expressly grants the right to file enforcement suits and class action suits to individual taxpayers. Further, it provides for an award of attorney fees to the successful taxpayer plaintiff. However, it grants no such right to governmental entities.

■ The BOCC argues that, nevertheless, it has standing to bring this suit in a representative capacity on behalf of its taxpayers. However, contrary to the BOCC's argument, a county may not bring an action on behalf of its taxpayers in the absence of an express legislative grant of authority. *Board of County Commissioners v. Love,* 172 Colo. 121, 470 P.2d 861 (1970).

Here, TABOR does not expressly confer standing on the BOCC, either in its own right or in a representative capacity. Thus, we conclude that the BOCC does not have standing under TABOR to maintain its claims.

Because we conclude that the BOCC lacks standing, we need not address the other contentions raised by the parties.

The judgment is reversed and the cause is remanded to the trial court with directions to dismiss the complaint.

Judge TAUBMAN and Judge KAPELKE concur.