24CA0433 Red v Vail 05-22-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0433
City and County of Broomfield District Court No. 22CV30131
Honorable Sean Finn, Judge

Red Sky Ranch Metropolitan District,

Plaintiff-Appellant,

v.

Vail Associates, Inc., a Colorado corporation, Vail Resorts, Inc., a Colorado corporation, VR Holdings, Inc., a Colorado corporation, Vail Resorts Development Company, a Colorado corporation, the Vail Corporation, a Colorado corporation, and Holland Creek Metropolitan District, a political subdivision,

Defendants-Appellees.

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE HAWTHORNE*
Lipinsky and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 22, 2025

Fox Rothschild, LLP, Marsha M. Piccone, Risa D. Brown, Denver, Colorado; Ogborn Mihm LLP, Peter McClenahan, Denver, Colorado, for Plaintiff-Appellant

Brownstein Hyatt Farber Schreck, LLP, Jonathan G. Pray, David B. Meschke, Reilly E. Meyer, Denver, Colorado, for Defendants-Appellees Vail Associates, Inc., a Colorado corporation, Vail Resorts, Inc., a Colorado corporation, VR Holdings, Inc., a Colorado corporation, Vail Resorts Development Company, a Colorado corporation, and the Vail Corporation, a Colorado corporation

Davis Graham & Stubbs, LLP, Brandee L. Caswell, Theresa Wardon Benz, Katharine M. McDermott, Denver, Colorado for Defendant-Appellee Holland Creek Metropolitan District, a political subdivision

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiff, Red Sky Ranch Metropolitan District (Red Sky), appeals a district court's orders dismissing Red Sky's claims for declaratory relief against defendants, Vail Associates, Inc.; Vail Resorts, Inc.; VR Holdings, Inc.; Vail Resorts Development Company; and the Vail Corporation (collectively, Vail) and Holland Creek Metropolitan District (Holland Creek), and denying Red Sky leave to amend its claims.  We affirm.

## I.     Background

¶ 2     This case involves the contractual relationship between two metropolitan districts, Red Sky and Holland Creek (the districts). Red Sky alleged that Vail entirely controls Holland Creek and that, although Vail initially controlled Red Sky, the homeowners of the Red Sky Ranch community now control it.

¶ 3     Vail began developing the districts in September 2000, after the Eagle County Board of Commissioners approved forming the districts and their "Consolidated Service Plan" (the Service Plan). The Service Plan adopted a dual-district structure for funding the needs of a new community to be known as Red Sky Ranch.  Under the Service Plan, Holland Creek was established as the "service district" responsible for "managing the construction and operation

1

of facilities and improvements needed for Red Sky Ranch." Holland Creek would "own and operate the public facilities throughout Red Sky Ranch." Red Sky was established as the "financing district" responsible for "providing the funding and tax base" needed to support Holland Creek's service district responsibilities. The Service Plan also called for the newly created districts to enter into intergovernmental agreements to define their respective obligations.

¶ 4 In June 2001, Red Sky and Holland Creek entered into a "District Facilities Construction and Service Agreement" (the Master IGA). The Master IGA required Red Sky to pay for the construction and initial financing of the infrastructure for the development of Red Sky Ranch, in addition to its financial obligations to Holland Creek under the Service Plan. The Master IGA provides that it may be terminated after Red Sky settles all remaining payments and financial obligations to Holland Creek.

¶ 5 Red Sky filed its complaint in May 2022, seeking, as relevant here, a declaratory judgment establishing the parties' rights under the Master IGA. Specifically, Red Sky sought declarations that (1) if Red Sky's debt obligations to Holland Creek under the Master IGA are not paid in full within the thirty-year time limit that its voters

2

approved, then those debts would be extinguished and uncollectable; (2) Red Sky's debt obligations to Holland Creek under a loan agreement are not enforceable; and (3) certain rights and obligations in the Master IGA, including the service and financing district structure and purported debts, are void and unenforceable against Red Sky because they restrict Red Sky's legislative powers.

¶ 6    Holland Creek separately filed a counterclaim against Red Sky, seeking a declaratory judgment regarding the validity of Red Sky's obligations under the Master IGA and Holland Creek's right to pursue remedies against Red Sky for seeking to invalidate the Master IGA.  And Vail filed a C.R.C.P. 12(b)(5) motion to dismiss Red Sky's complaint.

¶ 7    In December 2022, the district court granted Vail's motion to dismiss (2022 Dismissal Order).[1]  The district court later denied Red Sky's motion to amend its complaint on the basis that the 2022 Dismissal Order was a final judgment and, therefore, Red Sky could only file an amended complaint if it first sought relief from the judgment under C.R.C.P. 59 or 60, which Red Sky had not done.

---

[1] Red Sky does not appeal the district court's dismissal of its second claim, which concerned water rights for Red Sky Ranch.

Red Sky then filed a motion under C.R.C.P. 60 for relief from the 2022 Dismissal Order — again seeking leave to amend its complaint — which the district court denied.

¶ 8     Red Sky appealed, and a division of this court concluded that it lacked jurisdiction because no final, appealable judgment had been entered; thus it remanded the case to the district court. On remand, Red Sky again sought leave to amend its complaint. In January 2024, the court granted the motion as to Red Sky's third, fifth, and sixth claims for relief but otherwise denied the motion (2024 Order).

¶ 9     Red Sky now appeals the district court's 2022 Dismissal Order and the 2024 Order, contending that the court erred by (1) dismissing Red Sky's declaratory relief claim in which it alleged that the Master IGA is unenforceable to the extent it limits Red Sky's legislative powers and denying Red Sky leave to amend that claim; and (2) dismissing Red Sky's declaratory relief claim in which it alleged that Red Sky's debt obligations under the Master IGA are unenforceable to the extent they exceed the Taxpayer's Bill of Rights (TABOR) authorization and denying Red Sky leave to amend that claim.

## II. Standard of Review and Applicable Law

¶ 10 "We review a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the trial court." *Norton v. Rocky Mountain Planned Parenthood, Inc.*, 2018 CO 3, ¶ 7. "We accept all factual allegations in the complaint as true, viewing them in the light most favorable to the plaintiff, but we are not required to accept bare legal conclusions as true." *Id.* We also review a district court's interpretation of a contract de novo. *Rocky Mountain Health Maint. Org., Inc. v. Colo. Dep't of Health Care Pol'y & Fin.*, 54 P.3d 913, 919 (Colo. App. 2001).

¶ 11 While granting leave to amend is within the district court's discretion, we review that question de novo when a court denies leave to amend on grounds that the amendment would be futile. *Benton v. Adams*, 56 P.3d 81, 85 (Colo. 2002). A court may properly deny leave to amend when the amendment would be futile. *Polk v. Denver Dist. Ct.*, 849 P.2d 23, 27 (Colo. 1993). "The doctrine of futility justifies denying the amendment when the amendment would not survive a motion to dismiss, merely restates the same facts as the original complaint, or reasserts a claim already

dismissed by the trial court." *Bristol Co., LP v. Osman,* 190 P.3d 752, 759 (Colo. App. 2007).

### III. Delegation of Legislative Powers

¶ 12 Red Sky first asserts that the district court erred by (1) improperly dismissing its claim to declare the Master IGA unenforceable because it improperly delegated Red Sky's legislative powers and (2) denying leave to amend the claim. We disagree.

### A. Relevant Facts

¶ 13 Under the Master IGA, Holland Creek issued a $12 million bond (the 2001 Bond) to begin constructing Red Sky Ranch. And in 2002, Holland Creek and Red Sky entered into a loan agreement with VR Holdings, Inc. (the 2002 Loan Agreement) to obtain more funds needed to complete the Red Sky Ranch development. Red Sky was responsible for all amounts due under the 2002 Loan Agreement. Since then, Holland Creek and Red Sky have agreed to numerous refinancing transactions, incurring substantial debt on Red Sky's behalf. Red Sky maintains that this has caused the expected $35 million in debt to "balloon . . . to a projected $54-69 million . . . total debt service."

¶ 14    As relevant here, Red Sky's original complaint specifically sought declarations that its debt obligations under the 2002 Loan Agreement are unenforceable and certain Master IGA provisions are unenforceable because they restrict Red Sky's legislative powers and allow Holland Creek to control Red Sky's basic governmental functions. In its 2022 Dismissal Order, the court disagreed, finding that the Master IGA could not reasonably be read to delegate Red Sky's core governmental powers to Holland Creek or Vail.

¶ 15    On remand, Red Sky renewed its motion to amend, seeking a declaration that the Master IGA contained an unenforceable delegation of legislative authority.[2] Specifically, it claimed that the Master IGA caused Red Sky to surrender or delegate its reserved powers to Holland Creek, which Red Sky alleged was contrary to the nondelegation doctrine, article V, section 35 of Colorado's Constitution, the reserved powers doctrine, and the Local

---

[2] Red Sky also asserts that the Master IGA is unenforceable because it was not the result of an "arms' length transaction." However, beyond arguing that Vail-appointed employees signed the Master IGA on behalf of both of the districts when Vail controlled both of their boards, this argument is underdeveloped, and we therefore decline to address it. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped arguments).

Government Budget Law of Colorado (LGBL), §§ 29-1-101 to -115, C.R.S. 2024.

¶ 16     In its 2024 Order, the court denied Red Sky's request to amend the claim, again finding that the Master IGA could not reasonably be read to improperly delegate Red Sky's core governmental functions, but instead that the agreement required Red Sky to exercise its legislative functions to comply with its obligations.

## B.     Analysis

¶ 17     We conclude that the district court did not err by dismissing Red Sky's claim that the Master IGA improperly delegated its legislative powers or denying Red Sky's request for leave to amend.

¶ 18     "The reserved powers doctrine rests on a fundamental inability of sovereign governments to contract away essential attributes of their sovereignty." *Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 743 (Colo. 2007). However, the doctrine does not limit a government's ability to enter into contracts involving the exercise of its sovereign powers. *Id.*

¶ 19     Similarly, under the nondelegation doctrine, "the General Assembly may not delegate its law-making power although it may

8

delegate rule-making and other limited legislative authority to persons or entities within a proper statutory framework and with appropriate safeguards." *Krupp v. Breckenridge Sanitation Dist.*, 1 P.3d 178, 183 (Colo. App. 1999), *aff'd*, 19 P.3d 687 (Colo. 2001).

¶ 20 Also, as relevant here, the Special District Act grants districts the constitutional powers to enter into contracts and agreements, to borrow money and incur indebtedness, to evidence such indebtedness by notes, and to issue bonds. § 32-1-1001(1)(d)(I), (1)(e), C.R.S. 2024.

¶ 21 In its original complaint, Red Sky alleged that the Master IGA removed Red Sky's rights to pass its own budget and delegated those rights to Holland Creek, in violation of the reserved powers and nondelegation doctrines.

¶ 22 However, the Master IGA requires Red Sky to exercise its authority in certain ways rather than depriving it of authority. Article IV, section 4.2 of the Master IGA obligates Red Sky to review the preliminary budget and approve it or propose additions or deletions to it. And section 4.3 mandates that Red Sky and Holland Creek discuss and attempt to reach an agreement on a preliminary budget. If Red Sky fails to engage in the budget process, section

4.4.a of the Master IGA contemplates that the preliminary budget will be the final budget, but only as far as the amounts do not exceed the allocations provided for in the Service Plan. Notably, Red Sky executed the Service Plan and does not challenge its enforceability on appeal. Also, article V defines Red Sky's and Holland Creek's rights and obligations. None of these Master IGA provisions divest Red Sky of its governmental powers but instead outline the nature of the districts' obligations under their respective structures. As the court found, while Red Sky may be required to impose fees or taxes to meet its Master IGA contractual obligations, the Master IGA did not vest Vail and Holland Creek with authority to take these actions on Red Sky's behalf.

¶ 23    So Red Sky did not plausibly allege a claim for relief that the Master IGA violates the reserved powers doctrine or the nondelegation doctrine.

¶ 24    Red Sky also argues that the Master IGA improperly delegates legislative functions in violation of article V, section 35 of the Colorado Constitution. We disagree.

¶ 25    Article V, section 35 of the Colorado Constitution provides:

> The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.

The Master IGA vested Holland Creek, a metropolitan district, and not Vail, with municipal functions. *See Carousel Farms Metro. Dist. v. Woodcrest Homes, Inc.*, 2019 CO 51, ¶ 34 n.9 ("Metropolitan districts, since they can offer multiple services, are often established by developers to finance, through the issuance of municipal bonds, the infrastructure necessary to support a new subdivision.") (citation omitted). And the presence of Vail employees on Holland Creek's board does not make Holland Creek a private entity. *See id.* at ¶ 34 (noting that developer employees frequently comprise the sole managers of special districts in the districts' early stages).

¶ 26    Finally, the LGBL requires that each local government adopt an annual budget, and that no budget "shall provide for expenditures in excess of available revenues." § 29-1-103(1), (2), C.R.S. 2024. The LGBL also requires that a local government hold a hearing to consider adopting the proposed budget, and to enact

11

an ordinance or resolution adopting the budget and making appropriations before any mill levy is certified. § 29-1-108(1), (2), C.R.S. 2024. But Red Sky did not allege that it could not follow these requirements under the Master IGA. And the Master IGA does not provide for Red Sky's internal processes under the LGBL. Instead, the Master IGA mandates that Red Sky use its budgeting powers, and that the districts hold a hearing to consider adopting the proposed budget and may revise or alter that budget. And Red Sky's board of directors consistently holds public hearings on its budget in compliance with the LGBL. Lastly, the Master IGA expressly mandates Red Sky's certification requirements to pass a mill levy.

¶ 27     Because Red Sky's theories fail as a matter of law, and no additional factual allegations change the Master IGA's plain language, we conclude that the district court properly dismissed Red Sky's declaratory judgment claim that the Master IGA was unenforceable because it delegated Red Sky's legislative powers. And because Red Sky's proposed amendments to its complaint do not change the arguments the district court properly rejected, any

amendment to this claim would be futile. *See Bristol*, 190 P.3d at 759.

## IV. Violation of TABOR

¶ 28 Red Sky next contends that the district court erred by (1) improperly dismissing its claim to declare that Red Sky's financial obligations under the Master IGA were unenforceable because they exceed Red Sky's TABOR authorization and (2) denying leave to amend that claim. We disagree.

### A. Relevant Facts

¶ 29 After Eagle County approved the Service Plan, Red Sky's electors voted to approve an increase in Red Sky's debt under Ballot Issue L. Ballot Issue L authorized Red Sky to incur debt in an amount not to exceed $36,382,378 and permitted it to raise taxes to pay financial obligations incurred under the Master IGA for thirty years after entering into that contract.

¶ 30 As relevant here, Red Sky's original complaint specifically sought a declaration that Red Sky's financial obligations under the Master IGA are limited by its actual authorization under TABOR through Ballot Issue L. And in the second claim in its proposed amended complaint, Red Sky sought a declaratory judgment that

13

Red Sky's financial obligations under the Master IGA to pay toward the 2001 Bond and 2002 Loan Agreement are limited and unenforceable under Red Sky's TABOR authorization as it pertains to Ballot Issue L's intergovernmental-agreement thirty-year time restriction provision. Red Sky claimed that the Master IGA sought to require performance beyond the thirty-year time restriction established by Ballot Issue L. Red Sky made this allegation in its original complaint; however, it argued that the amended complaint solved its deficiencies.

¶ 31    In its ruling on Red Sky's proposed TABOR claim, the district court pointed to its analysis in the 2022 Dismissal Order of the similar claim pleaded in the original complaint. The court found that the same analysis was relevant to the claim presented in the proposed amended complaint because the amended complaint did not resolve the deficiencies that the court identified in the 2022 Dismissal Order. Therefore, the court denied Red Sky's motion to amend under the futility of amendment doctrine.

## B.    Analysis

¶ 32    We conclude that the district court properly determined that the Master IGA expressly complies with TABOR and, therefore, that

the court properly dismissed Red Sky's claim and properly denied its motion for leave to amend.

¶ 33   TABOR requires voter approval of any proposed tax increase and grants taxpayers the right to enforce its provisions. Colo. Const. art. X, § 20; *Bd. of Comm'rs v. City of Broomfield*, 7 P.3d 1033, 1037 (Colo. App. 1999).

¶ 34   The Master IGA expressly states that "[t]he authorization for issuance of debt, fiscal year spending, revenue collections and other constitutional matters requiring voter approval for purposes of [the Master IGA] . . . were approved at elections held for the Districts" and that its terms therefore require no further electoral approval. The Master IGA further provides:

> To the extent that further voter authorization is required to give effect to any provision of [the Master IGA], [Red Sky] agrees to use best efforts to obtain voter approval for such additional authorization and, if necessary, obtain approval of an amendment to the Service Plan at the request of [Holland Creek].

¶ 35   Notably, it is undisputed that Red Sky's financial obligations are limited to a term of thirty years under Ballot Issue L. And to the extent that Ballot Issue L does not authorize the full repayment period, Red Sky retains control to hold a renewed TABOR vote, as

15

contemplated by the provision of the Master IGA requiring Red Sky to use its best efforts to obtain voter approval for additional taxing authorization. Also, the Master IGA provides that, if any of its provisions are declared unenforceable due to a violation of TABOR, the district involved in the violation is required to cure the violation, including by obtaining voter approvals. Because the Master IGA thus mandates compliance with TABOR, the district court properly dismissed Red Sky's claim for a declaratory judgment.

¶ 36 Finally, Red Sky's proposed amended claim is futile because, like the original claim, it failed to state a claim upon which relief can be granted. Accordingly, because Red Sky's proposed amendment would not survive a motion to dismiss, the district court properly denied amendment as futile.

## V. Attorney Fees

¶ 37 Red Sky and Holland Creek each request awards of their reasonable attorney fees and costs associated with this appeal, citing the Master IGA, section 10.18.

¶ 38 That section provides that, in the event of litigation between the districts regarding the Master IGA, the prevailing district "shall be entitled to receive from the losing District . . . all reasonable

16

costs and expenses incurred by the prevailing District . . . , including attorney fees." Because we conclude the district court did not err, we grant Holland Creek's request and remand the case to the district court to determine Holland Creek's reasonable attorney fees, and to award such fees to Holland Creek. *See* C.A.R. 39.1; *Camelot Invs., LLC v. LANDesign, LLC*, 973 P.2d 1279, 1281 (Colo. App. 1999). Because Holland Creek has prevailed on appeal, we deny Red Sky's request for an award of attorney fees.

## VI.    Disposition

¶ 39    The district court's orders dismissing Red Sky's claims for declaratory relief and denying Red Sky leave to amend its claims are affirmed. The case is remanded with directions to calculate and award Holland Creek its reasonable attorney fees.

JUDGE LIPINSKY and JUDGE JOHNSON concur.