John A. BROOKS and Lorraine M. Brooks, Plaintiffs,

v.

BANK OF BOULDER, Defendant.

Civil Action No. 94–K–2689.

United States District Court, D. Colorado.

Jan. 17, 1996.

Douglas M. Tisdale, Charles M. Hobbs, Theodore Albert Ulrich, Popham, Haik, Schnobrich & Kaufman, Ltd., Denver, CO, for John Brooks and Lorraine Brooks.

Mark M. Haynes, Joseph Clyde French, French & Stone, P.C., Boulder, CO, for Bank of Boulder.

David Richard Eason, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Steven K. Bosley.

Susan M. Hargleroad, Kathryn Kay Heet, Pendleton, Friedberg, Wilson, Hennessey & Meyer PC, Denver, CO, for Charles Jensen, Bruce McDowell and Thomas Ratterree.

## ORDER ON PENDING MOTIONS

KANE, Senior District Judge.

John and Lorraine Brooks ("Plaintiffs") allege M & L Business Machines Co. ("M & L") operated a fraudulent Ponzi scheme in which investors were promised very high rates of return from the resale of computers and office equipment and encouraged to reinvest their returns. The equipment did not exist, however, and the returns were funded by investor capital as well as a check kiting scheme in which M & L deposited funds from the Ponzi scheme into accounts maintained at the Bank of Boulder ("the Bank") and created a negative account balance by kiting checks without sufficient funds.

Plaintiffs further allege the Bank discovered the schemes but, in order to reduce its own losses which would have resulted if the Ponzi scheme collapsed and the negative account balance from the check kiting scheme was not reduced, intentionally and knowingly assisted and participated with M & L in the perpetuation of the schemes while it shifted the risks from itself to the investors. The Bank's perpetuation of the schemes allegedly induced Plaintiffs' investments in M & L which were lost upon the collapse of the Ponzi scheme.

Plaintiffs filed an Amended Complaint in January 1995 claiming the Bank and several individuals involved with M & L and the Bank violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a), (c) and (d), and the Colorado Organized Crime Control Act ("COCCA"), Colo.Rev.Stat. §§ 18–17–104(1)(a), (3), and (4) (1986). The Amended Complaint also claimed the Bank was negligent, was unjustly enriched, and violated the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6–1–105(q) (1992). By Order dated July 1, 1995, I dismissed all Plaintiffs' claims except the unjust enrichment claim against the Bank and provided Plaintiffs with an opportunity to amend their complaint. *See Brooks v. Bank of Boulder,* 891 F.Supp. 1469 (D.Colo. 1995).

Plaintiffs move for leave to file a Second Amended Complaint which names the Bank as the only Defendant and claims it violated

RICO, 18 U.S.C. §§ 1962(a) and (c), COCCA, Colo.Rev.Stat. §§ 18–17–104(1)(a) and (3), and was unjustly enriched. The Bank moves for partial summary judgment with respect to the unjust enrichment claim which survived the Bank's motion to dismiss Plaintiffs' Amended Complaint. I address the motions together, grant Plaintiffs' motion for leave to file the Second Amended Complaint, and deny the Bank's motion for partial summary judgment with respect to the unjust enrichment claim.

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT.

### I. *Standards for Leave to Amend.*

█ Fed.R.Civ.P. 15(a) provides: A party may amend the party's pleading once as a matter of course.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993).

### II. *Merits.*

### A. *Failure to cure deficiencies; futility of amendment.*

█ A district court is clearly justified in denying a motion to amend if the proposed amendment cannot withstand a motion to dismiss or otherwise fails to state a claim. *Schepp v. Fremont County, Wyo.,* 900 F.2d 1448, 1451 (10th Cir.1990).

█ Federal Rule of Civil Procedure 8(a) requires a plaintiff to provide a short and plain statement of the claim showing the pleader is entitled to relief. Rule 9(b), however, requires a plaintiff pleading fraud to state with particularity the circumstances constituting the fraud. The dismissal of a claim for failing to satisfy Rule 9(b) is treated as a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *Ambraziunas v. Bank of Boulder,* 846 F.Supp. 1459, 1462 (D.Colo.1994). In ruling on a motion to dismiss under Rule 12(b)(6), all factual allegations must be accepted as true and all reasonable inferences must be drawn in favor of the pleader. A claim should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him or her to relief. *Id.*

### 1. *RICO § 1962(a) and COCCA § 18–17–104(1)(a). (Claims 1, 2, 3, and 4).*

Section 1962(a) prohibits the use or investment of income, derived from two or more enumerated predicate acts which constitute a pattern of racketeering activity, in an enterprise engaged in interstate commerce. Each of the elements of a RICO claim must be pled with particularity under Rule 9(b). COCCA, Colo.Rev.Stat. § 18–17–104(1)(a) is modelled after RICO § 1962(a).

Plaintiffs allege the Bank and M & L engaged in patterns of racketeering activity consisting of wire and mail fraud, aiding and abetting wire and mail fraud, bankruptcy fraud, aiding and abetting bankruptcy fraud, and violations of the Colorado Securities Act (Colo.Rev.Stat. §§ 11–51–501 and 603(1) (1993)). (Sec.Am.Compl. ¶¶ 230 through 243.) Such patterns allegedly occurred over a period of at least sixteen months. (Sec. Am.Compl. ¶ 230.)

Plaintiffs allege the Bank received income from these patterns in the form of transaction fees and service charges to the M & L accounts, penalty interest on the negative balance of the M & L accounts, and investment of monies in M & L accounts in overnight funds.

The first and second claims for relief allege the Bank used or invested such income in itself in the ordinary course of its business in order to minimize its losses from the Ponzi and check kiting schemes. The third and fourth claims for relief allege the Bank used or invested such income in M & L rather than itself. The Bank allegedly did so by providing M & L with numerous loans, (Sec. Am. Compl. ¶¶ 83–86, 117, 127, 140, 168–171, 187, and 188), and allowing M & L to have a

"float" on its account, (Sec. Am. Compl. ¶¶ 91–93, 102, 107–122, 131, 132, 138, 139, 141, 144, 148–150, 158–160, 162 and 163).

■ In order to recover under § 1962(a), plaintiffs must plead that the injury flowed from defendant's use or investment of racketeering income, not the predicate acts themselves. *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.1989), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989).

■ Plaintiffs allege the Bank's use and investment of racketeering income caused the loss of the monies they invested in M & L because such use and investment enabled the continuation of the fraudulent schemes and created the illusion of M & L as a prospering and legitimate company. Plaintiffs assert they relied upon and were induced by this illusion when they invested their monies in M & L.

Accepting all factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs, I find Plaintiffs have adequately alleged the Bank used or invested income derived from M & L's pattern of racketeering in itself and M & L and, thus, the filing of the first, second, third and fourth claims for relief would not be futile.

2. *RICO § 1962(c) and COCCA § 18–17– 104(3). (Claims 5 and 6).*

■ Section 1962(c) provides for the liability of any person associated with an enterprise which affects interstate commerce to conduct or participate, directly or indirectly, in the conduct of the affairs of such enterprise through a pattern of racketeering activity. "Congress did not intend to extend RICO liability under § 1962(c) beyond those who participate in the operation or management of an enterprise through a pattern of racketeering activity." *Reves v. Ernst & Young*, 507 U.S. 170, 184, 113 S.Ct. 1163, 1172, 122 L.Ed.2d 525 (1993). Plaintiffs must therefore allege the particular defendant participated in the operation or management of the enterprise itself. *Id.* Liability is not limited to those with primary responsibility for, or a formal position in, the enter-

prise, but defendants must have some part in directing the enterprise's affairs. *Id.* at 179– 80, 113 S.Ct. at 1170. An enterprise might be operated or managed by persons associated with it who exert control over it. *Id.* at 184–85, 113 S.Ct. at 1173.

■ To show a pattern of racketeering activity, plaintiffs must show the defendant committed racketeering predicate offenses which are related and amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). The schemes have terminated, however, and Plaintiffs concede the racketeering activity was not open-ended.

Absent a threat continuing into the future, a plaintiff can demonstrate continuity by pleading criminal activity over a substantial period of time. *H.J. Inc.*, 492 U.S. 229, at 242, 109 S.Ct. 2893, at 2902. "Predicate acts extending over a few weeks or months and threatening no future conduct do not satisfy this: Congress was concerned in RICO with long-term criminal conduct." *Id.*. "[Six to seven months] is not a long enough period to state a close-ended RICO claim." *Alter v. DBLKM, Inc.*, 840 F.Supp. 799, 809 (D.Colo. 1993).

■ COCCA, Colo.Rev.Stat. § 18–17– 104(3) (1986), is modelled after RICO § 1962(c). Under COCCA it is not necessary to allege continuity. Plaintiffs must, however, identify two criminal predicate acts that are related to the conduct of the enterprise. *People v. Chaussee*, 880 P.2d 749, 758 (Colo.1994).

■ In the instant case, therefore, in order to impose liability under RICO § 1962(c) or COCCA, Colo.Rev.Stat. § 18–17–104(3), Plaintiffs must allege the Bank participated in directing the affairs of M & L through the commission of criminal predicate acts. Plaintiffs allege the Bank directed the affairs of M & L by exerting control of M & L's accounts at the Bank. Specifically, Plaintiffs allege the Bank: through a pattern of mail and wire fraud from March 1, 1990 to September 30, 1990, managed and controlled M & L accounts at the Bank by placing holds and

freezes on the disbursement account while continuing to accept mailed and interstate-wired deposits to M & L's depository accounts (Sec.Am.Compl. ¶¶ 306, 151–164, 177–183.); through a pattern of mail and wire fraud and aiding and abetting mail and wire fraud from November 1989 to at least September 1990, maintained the check kiting scheme by administering the M & L accounts and accepting investor funds (Sec.Am.Compl. ¶ 310); and, through a pattern of bankruptcy fraud and aiding and abetting bankruptcy fraud from October 1990 to at least December 1990, concealed assets of the M & L bankruptcy estate by transferring funds out of the M & L accounts and diverting them to third persons (Sec.Am.Compl. ¶ 310).

Accepting all factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs, I find Plaintiffs have adequately alleged the Bank participated, at least indirectly, in the operation or management of M & L through a pattern of racketeering activity for a substantial period of time by managing its accounts at the Bank. Thus, the filing of the fifth and sixth claims for relief would not be futile.

### 3. *Unjust Enrichment. (Claim 7).*

█ Plaintiffs allege the Bank knew of the fraudulent schemes no later than November 1989 and began to assist and participate with M & L in the schemes in order to reduce its own losses from the schemes. Since Plaintiffs invested in M & L between March 1990 and September 1990, Plaintiffs contend the Bank directly and proximately caused Plaintiffs' investment in M & L and the resulting loss of that investment because it perpetuated the illusion of M & L's legitimacy.

Plaintiffs further contend the Bank was unjustly enriched because it profited by investing Plaintiffs' funds in overnight funds and because it benefitted by inducing further investments in M & L when it accepted Plaintiffs' funds and allowed fraudulent investment "returns" to be paid to them. (Sec. Am.Compl. ¶¶ 323, 325.)

Accepting all factual allegations as true and drawing all reasonable inferences in favor of Plaintiffs, I find Plaintiffs have ade-

quately alleged the Bank was unjustly enriched and, thus, the filing of the seventh claim for relief would not be futile.

### B. *Undue prejudice to the Bank.*

Plaintiffs filed a complaint on November 23, 1994. After the Bank prepared a motion to dismiss the complaint, Plaintiffs filed an amended complaint without prior notice to the Bank. Upon the Bank's motion to dismiss the amended complaint, all claims but the unjust enrichment claim were dismissed. The Bank then filed an answer to the amended complaint and a motion for partial summary judgment on the unjust enrichment claim. Plaintiffs now seek leave to file a Second Amended Complaint.

█ The Bank contends granting leave would cause it undue prejudice because it has answered the amended complaint and filed a motion for partial summary judgment on the unjust enrichment claim. I address the Bank's summary judgment motion in this opinion and find, therefore, the Bank would not be unduly prejudiced by the filing of a Second Amended Complaint.

### C. *Undue delay; bad faith.*

The Bank's Motion for Partial Summary Judgment on the unjust enrichment claim asserts Plaintiffs are not entitled to restitution because they received usurious interest rates and, therefore, have unclean hands. The Bank contends Plaintiffs have, in bad faith, attempted to alter the characterization of their transactions with M & L, from interest-bearing loans to "investments", in order to defeat the Bank's motion. The Bank also contends Plaintiffs have acknowledged access to the information upon which the Second Amended Complaint is based since at least early 1995 but have sought to defer filing the Second Amended Complaint until they could conduct discovery. These contentions are best dealt with on a careful consideration of the merits of the claims and not by a procedural disbarment of them.

Thus, I grant Plaintiffs' motion to file their Second Amended Complaint.

## THE BANK'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

The Bank moves for partial summary judgment on Plaintiffs' unjust enrichment claim which survived the Bank's motion to dismiss Plaintiffs' Amended Complaint. Plaintiffs' Second Amended Complaint, however, includes a slightly amended unjust enrichment claim. The factual allegations upon which the claims for unjust enrichment in the two complaints are based are substantially the same. In the interest of consistency and expediency and in order to avoid prejudice to the Bank, I address the Bank's motion for partial summary judgment with respect to the unjust enrichment claim contained in Plaintiffs' Second Amended Complaint.

### I. *Standards for Summary Judgment.*

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The evidence must be viewed in the light most favorable to the nonmovant and all doubts resolved in favor of the existence of triable issues of fact. *World of Sleep, Inc. v. La–Z–Boy Chair Co.,* 756 F.2d 1467, 1474 (10th Cir.1985), *cert. denied* 474 U.S. 823, 106 S.Ct. 77, 88 L.Ed.2d 63 (1985). To dispute facts, however, the nonmovant must offer evidence and cannot rely on mere allegations. *R–G Denver Limited v. First City Holdings of Colorado, Inc.,* 789 F.2d 1469 (10th Cir.1986).

### II. *Merits.*

#### A. *Unclean hands.*

The Bank contends Plaintiffs' equitable claim of unjust enrichment is barred by the doctrine of unclean hands because Plaintiffs were receiving usurious interest rates on their loans to M & L and, therefore, have failed to come into equity with clean hands.

■ Under the principle of unclean hands, those who seek equity must do equity. *Bernhardt v. Hemphill,* 878 P.2d 107, 113 (Colo.App.1994). Colorado law prohibits interest rates on loans greater than forty-five percent (45%) per annum. Colo.Rev.Stat. § 5–12–103 (1992); Colo.Rev.Stat. § 18–15–104(1) (1986).

The Bank asserts Plaintiffs made loans, evidenced by promissory notes, to M & L at interest rates in excess of forty-five percent (45%) per annum. (Am.Compl. ¶¶ 28, 74–76). The interest rate on the loans, as reflected in Plaintiffs' Proof of Claim filed in the M & L bankruptcy proceedings, ranged from ninety-six percent (96%) per annum to three-hundred and sixty-four percent (364%) per annum.

Plaintiffs assert that, although they were issued promissory notes by M & L, they were not making loans to M & L and receiving interest but, rather, simply investing in M & L and anticipating returns of principal on their investments. They further assert, therefore, they did not violate the Colorado usury laws.

■ Criminal conduct, however, is not necessary for a finding of unclean hands. Such a finding merely requires improper conduct and a party may be guilty of unclean hands even if his or her behavior does not rise to the level of bad faith. *Hocker v. New Hampshire Ins. Co.,* 922 F.2d 1476, 1486 (10th Cir.1991).

■ It is not possible to weigh the equities on the evidence before me. The unclean hands doctrine requires a searching inquiry that does not lend itself to summary treatment. As with questions of intent, a full factual exploration is required.

#### B. *Laches.*

The unjust enrichment claim in the Amended Complaint was based upon claims of negligence and fraud which were barred by the applicable statute of limitations and dismissed. The Bank therefore contends Plaintiffs' unjust enrichment claim is barred by laches because the statute of limitations for the negligence and fraud claims must be applied to the equitable unjust enrichment claim as well.

A court of equity is not bound by the statute of limitations, but, in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to actions at law of like character. Under ordinary cir-

cumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute.... [W]hen the suit is brought after the statutory time has elapsed, the burden is on the complainant to aver and prove [extraordinary] circumstances making it inequitable to apply laches to his case.

*Shell v. Strong,* 151 F.2d 909, 911 (10th Cir. 1945).

▮ Lapse of time alone, however, in the absence of resulting injury, prejudice, or disadvantage to the defendant or others adversely interested does not constitute laches. *Id.* Since laches is an equitable defense, it will be applied only where the enforcement of the right asserted will work injustice. *Id.*

▮ There has been no showing that the Bank has been injured, prejudiced or disadvantaged by Plaintiffs' delay and, thus, I find the defense of laches cannot be considered in a summary judgment context.

Thus, I deny the Bank's motion for partial summary judgment on the unjust enrichment claim.

### CONCLUSION.

For the aforesaid reasons, I grant Plaintiffs' Motion for Leave to File a Second Amended Complaint and deny the Bank's Motion for Partial Summary Judgment on the Unjust Enrichment Claim. The Second Amended Complaint is deemed to be filed as of the date of this order. Accordingly,

IT IS ORDERED THAT Plaintiffs' Motion for Leave to File a Second Amended Complaint is GRANTED;

IT IS FURTHER ORDERED THAT Bank of Boulder's Motion for Partial Summary Judgment re: Plaintiffs' Fifteenth Claim for Relief is DENIED;

IT IS FURTHER ORDERED THAT Plaintiffs' to Set a Hearing on Pending Motions is DENIED as moot.