BRISTOL COMPANY, LP, a Nevada limited partnership, Plaintiff–Appellant,

v.

Lee OSMAN and Holland & Hart, LLP, Defendants–Appellees.

No. 06CA1498.

Colorado Court of Appeals, Div. VI.

Dec. 27, 2007.

Certiorari Denied Aug. 18, 2008.

Rumler Tarbox Lyden Law Corporation PC, James A. Jablonski, Denver, Colorado, for Plaintiff–Appellant.

McConnell Siderius Fleischner Houghtaling & Craigmile, LLC, Michael T. McConnell, Traci L. Van Pelt, Robert W. Steinmetz, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CARPARELLI.

In this legal malpractice proceeding, plaintiff, Bristol Company, LP (Bristol), appeals the judgment entered on orders dismissing claims against defendants, Lee Osman and Holland & Hart, and denying its requests to amend the complaint. Bristol also appeals the trial court's order denying its motion requesting clarification of the order denying leave to amend the complaint. We affirm.

## I. Background

### A. Bristol's Patent Infringement Claim

In 1997, Bristol suspected that Basic Technologies Corporation (Basic) was infringing some of its patents. At that time, Lee Osman, an attorney employed by Holland & Hart, advised Bristol regarding communications with Basic regarding the patents. Notwithstanding Bristol's concern about Basic's infringement, Bristol did not file suit.

In August 2000, Osman left Holland & Hart and joined Dorsey & Whitney, LLP. Although Osman continued to represent Bristol, Holland & Hart was no longer his employer and provided no further legal services to Bristol.

In 2004, Bristol learned that, if it sued Basic, Basic could assert a presumption of the equitable defense of laches, and, thereby, hinder or preclude Bristol's ability to recover the full amount of its pre-suit damages. Thereafter, two law firms declined to sue Basic on behalf of Bristol on a contingent fee basis.

### B. Bristol's Malpractice Suit

In January 2005, Bristol filed suit against Osman, Holland & Hart, and Dorsey & Whitney, alleging various failures to advise it that undue delay in filing an infringement suit could give rise to a laches defense.

Between January and November 2005, Bristol filed a complaint (Complaint 1), an amended complaint (Complaint 2), and four proposed amended complaints (Complaints 3 through 6). In March 2005, before any defendant answered Complaint 1, Bristol filed Complaint 2. Complaint 2 asserted claims against all defendants for breach of fiduciary duty and negligent failure to advise Bristol that, based on the doctrine of laches, delaying a patent infringement suit against Basic could prevent enforcement of Bristol's rights.

Dorsey & Whitney and Osman filed a motion to dismiss and for summary judgment on April 20, 2005, and, the next day, Holland & Hart and Osman filed three motions to dismiss. In May 2005, Bristol responded in part by submitting Complaint 3. In June 2005, before the trial court ruled on the various motions to dismiss, Bristol submitted Complaint 4 in place of Complaint 3. Neither Complaint 3 nor Complaint 4 was accompanied by a motion for leave to amend.

In July 2005, the trial court denied Osman's and Dorsey & Whitney's motion, but dismissed with prejudice the claims in Complaint 2 against Osman and Holland & Hart with regard to Osman's legal services while at Holland & Hart. In the same order, the court also denied, without prejudice, Bristol's request to further amend the complaint.

In August 2005, Bristol filed a motion for leave to file another amended complaint. This motion was accompanied by Complaint 5, which added a claim for relief against Holland & Hart for negligent prosecution of patents. The trial court denied Bristol's motion in October 2005.

Bristol attempted to file Complaint 6 in November 2005. This complaint did not include any claims against Holland & Hart. The trial court denied the motion to file Complaint 6 on December 1, 2005. Bristol settled its dispute with Osman and Dorsey & Whitney and filed a stipulation for dismissal with prejudice. The court accepted the stipulation on June 9, 2006.

## II. Dismissal

Bristol contends that the trial court erred when it dismissed its claims against Osman and Holland & Hart. We disagree.

### A. Law

We review a trial court's order dismissing claims de novo. When reviewing a motion to dismiss, we accept all allegations of fact in the complaint as true and read the complaint in the light most favorable to the plaintiff.

Because a motion to dismiss tests the sufficiency of the complaint, the trial court must base its decision solely on the complaint itself. A trial court may properly grant dismissal when the plaintiff's complaint fails to state a claim upon which relief can be granted. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo.2004).

### 1. Malpractice

■ In a legal malpractice action, the plaintiff must show that

   (1) the attorney owed it a duty of care,

   (2) the attorney breached that duty, and

   (3) the attorney's breach proximately caused it harm.

To demonstrate causation, the plaintiff must also show that the claim underlying the malpractice action would have been successful, but for the attorney's negligence. *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999).

Thus, to state a malpractice claim against Osman and Holland & Hart, Bristol was required to plead that between October 1997 and August 2000:

   (1) Osman and Holland & Hart had a duty to Bristol in an attorney-client capacity;

   (2) Osman and Holland & Hart breached that duty;

   (3) Osman and Holland & Hart's breach proximately caused harm to Bristol; and

   (4) Bristol's claim against Basic would have been successful but for Osman and Holland & Hart's negligence.

### 2. Laches

■ Laches is an equitable defense that acts to bar an award of pre-suit damages. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed.Cir.1992). As an equitable defense, it is committed to the sound discretion of the trial court, and the trial court decision is reviewed for abuse of discretion. *Aukerman*, 960 F.2d at 1028.

■ A trial court may apply laches when the plaintiff unreasonably and inexcusably delays bringing a legal claim and the delay prejudices or injures the defendant in some material way. *Aukerman*, 960 F.2d at 1028–29. The prejudice to the defendant may be either economic or evidentiary. Economic prejudice to a defendant may include liability for greater damages or the loss of monetary investment that a timelier lawsuit would likely have prevented. Evidentiary prejudice may include a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of witnesses, or the adverse effect that the passage of time has on witnesses' memories of relevant events. *Aukerman*, 960 F.2d at 1033. A trial court must balance, on the one hand, the length of the delay in filing the infringement suit and the plaintiff's explanation for the delay, against, on the other hand, the prejudice to the defendant resulting from the delay. Thus, it involves a weighing of equities and depends on the trial court's evaluation of the circumstances. *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 127 (4th Cir. 1966).

■ In a patent infringement case, a rebuttable presumption of laches arises six years after a plaintiff discovers infringement of its patent and does not bring a suit. *Aukerman*, 960 F.2d at 1034. When the presumption is triggered, "undue delay and prejudice are deemed established," absent evidence rebutting the presumption. John W. Schlicher, *Patent Law: Legal and Economic Principles* § 1.111 (2007).

Although the defense of laches is not a statute of limitations, courts often compare these two principles. *See generally Aukerman*, 960 F.2d 1020. This is true, in part, because "[c]ourts faced with patent infringement actions 'borrowed' the six-year damage limitation period in the patent statute now set out in [35 U.S.C.] section 286, as the time period for giving rise to a rebuttable presumption of laches." *Aukerman*, 960 F.2d at 1034.

### B. The Complaint

In pertinent part, Complaint 2, which was the complaint of record when the trial court issued its order dismissing the claims, alleged the following:

- from October 1997 through May 1998, Osman, while at Holland & Hart, drafted and helped draft letters to Basic alerting it to Bristol's patents, asking Basic to review the patents, advising Basic that Bristol was represented by Holland & Hart, and urging Basic to respond;
- after Basic denied any infringement of Bristol's patents, Osman counseled against suing Basic;
- at that time, Osman and Holland & Hart failed to make Bristol aware of the equitable defense of laches;
- after Osman left Holland & Hart and joined Dorsey & Whitney, two other Dorsey & Whitney attorneys failed to advise Bristol regarding laches and failed to "explain that it would bar any claim brought after unreasonable delay to the prejudice of another";
- beginning not later than 1997, Basic was infringing on Bristol's patents;
- two other law firms refused to pursue claims against Basic in 2004, apparently because of the vitality of the laches defense;
- Osman owed Bristol a duty to employ the degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession at the time the task was undertaken;
- all defendants breached their duties to exercise reasonable knowledge, skill, and judgment when they did not advise Bristol against unreasonable delay in enforcing its rights because laches could and would prevent later enforcement where Bristol was aware of its claims and its delay prejudiced Basic; and
- Bristol was damaged as a direct and proximate result of defendants' negligence.

## C. Trial Court's Ruling

Relying on *Brown v. Silvern*, 45 P.3d 749 (Colo.App.2001), and *Luttgen v. Fischer*, 107 P.3d 1152 (Colo.App.2005), the trial court ruled that, as a matter of law, Complaint 2 did not state sufficient facts to allege that Osman's representation before he left Holland & Hart caused harm to Bristol, and,

thus, that it failed to state a claim upon which relief could be granted. In both *Brown* and *Luttgen*, the appellants sought review of trial court orders granting summary judgment. *Luttgen*, 107 P.3d at 1153; *Brown*, 45 P.3d at 750.

In *Brown*, a division of this court held that " 'an attorney cannot be held liable *for failing to file an action prior to the expiration of the statute of limitations* if he [or she] ceased to represent the client and was replaced by other counsel before the statute ran on the client's action.' " *Brown*, 45 P.3d at 752 (emphasis added)(quoting *Steketee v. Lintz, Williams & Rothberg*, 38 Cal.3d 46, 210 Cal.Rptr. 781, 694 P.2d 1153, 1159 (1985) (where plaintiff alleged that attorney failed to file medical malpractice suit before the statutory limitation period expired, attorney could not be held liable if he stopped representing the client and was replaced by another attorney before the period expired)).

In *Luttgen*, the plaintiff alleged that her attorney negligently failed to advise her of the limitation period pertaining to possible tort claims. There, the client hired replacement counsel when nearly two years remained on the limitations period. The division held, as a matter of law, that the client's former counsel could not be held legally responsible *for failing to warn the client about the limitation period*. *Luttgen*, 107 P.3d at 1157.

Here, the trial court noted that there was no dispute that any infringement action brought by Bristol after October 2003 would have been presumptively barred. However, it reasoned that Osman's move to Dorsey & Whitney three years before that date extinguished any liability Holland & Hart might have for Osman's conduct while there.

## D. Analysis and Conclusions

Bristol alleged that Osman's negligent advice regarding laches caused it to be unable to sue Basic in 2004. We conclude that Bristol did not allege facts that, when read in the light most favorable to Bristol, were sufficient to support the conclusion that Osman's advice while at Holland & Hart caused the harm Bristol alleged it suffered. In making this determination, we do not con-

clude, as a matter of law, that an attorney who is replaced by another attorney can never be liable for failing to advise the client regarding a potential laches defense that causes harm to the client's interest after the attorney's representation ends. Nor do we conclude that when an attorney moves from one firm to another, the firm from which he departed can never be vicariously liable for harm caused by the attorney's legal service while at that firm.

To the extent that Bristol alleged or argued that Osman's negligent advice regarding laches would have caused it harm if Bristol had sued Basic before the presumption of laches arose in 2003, we conclude that the alleged harm was hypothetical and not susceptible of proof. Consequently, those allegations also failed to state a claim upon which relief could be granted.

### 1. Bristol's Malpractice Claims

Read in the light most favorable to Bristol, Complaint 2 alleges that between October 1997 and August 2000, Osman was negligent and Holland & Hart was vicariously liable when he

- counseled Bristol against suing Basic;
- did not make Bristol aware of the equitable defense of laches; and
- did not advise Bristol against unreasonable delay in enforcing its patent rights.

Complaint 2, again read in the light most favorable to Bristol, alleges that, in 2004, Bristol was unable to file suit because two law firms declined to take the case on a contingent fee basis, apparently because the presumption of laches had arisen in 2003.

### 2. Bristol's Theory of Liability

We first reject Bristol's contention that the court erred in construing its allegations regarding Osman's failure to advise it about laches as a failure to advise about a statute of limitations. Complaint 2 alleges that Bristol was harmed in 2004, after the presumption of laches arose, which is analogous to the expiration of a statute of limitations. It does not allege that Bristol sued or attempted to sue Basic before the presumption arose or that Osman's advice, while he was employed at Holland & Hart, such a suit to be unsuccessful.

After Holland & Hart moved for dismissal, Bristol argued a new theory of liability by responding that it did not concede that laches accrued only after the presumption arose. It argued that

- Osman's failure to respond to Basic's 1998 denial of infringement "may very well have caused Basic not to take steps to avoid infringement."
- By 2000, "Basic was likely engaged in new product planning leading to the 440 model, introduced in 2002, which again was done without any knowledge that Bristol disputed Basic's 1998 letter denying infringement."
- "A suit brought in 1998 may very well have caused [Basic] to alter course and to avoid loss of its profits earned by infringing sales."
- It could and would plead these matters if the court deemed it necessary.
- Additional evidence would be gathered during discovery when Bristol was permitted to depose Basic.

Before the court ruled on the motion to dismiss, Bristol submitted Complaint 4, which added allegations that could support a conclusion that Basic would have had a successful laches defense even before a presumption of laches arose in 2003. Complaint 4 alleged, *on information and belief*, that, after Osman failed to respond to Basic's 1998 denial letter and Bristol did not file suit, Basic

- believed that Bristol was satisfied with the explanation why Basic was not infringing when in fact the explanation was regarded as irrelevant to the key claims,
- continued during 1997 and thereafter to make and sell infringing products,
- did not obtain a license during that time,
- did not modify it products to avoid infringement,
- continued to design later products which had the infringing features, including the 440 introduced in 2002, and
- lost evidence.

### 3. Conclusions

■■■ The essential question is whether Complaint 2 was sufficient to allege that Osman's advice between 1997 and 2000 not to sue Basic, his failure to tell Bristol about the defense of laches, and the failure to advise it against unreasonable delay, caused Bristol to be unable to successfully sue Basic in 2004. We conclude, as a matter of law, that the allegations in Complaint 2 are too vague, insubstantial, and attenuated to allege that, but for the purported inadequacies in Osman's advice while at Holland & Hart, Bristol would have sued Basic before the presumption of laches arose and would have won its suit, and, thus, would not have suffered the harm it alleged it suffered in 2004.

■■■ Assuming, without deciding, that the court should also have considered the additional allegations in Complaint 4, we conclude that those allegations were not sufficient to allege that Bristol suffered harm before the presumption of laches arose or that Osman's advice while he was at Holland & Hart caused any harm. Complaint 4 does not assert facts susceptible of proof; it is purely hypothetical. In Complaint 4, Bristol speculates about what Basic might have asserted in defense had Bristol filed a lawsuit before 2003; how a trial court might have balanced a delay, the length of which Bristol does not specify, against Bristol's conjecture about prejudice to Basic; and how the court might have reduced Bristol's recovery because of laches. These suppositions do not identify an actual harm, but, rather, a harm that might have occurred had events unfolded differently. Thus, Complaint 4 not only alleges matters not susceptible of proof, but it also alleges no facts upon which it could be concluded that Osman's advice while at Holland & Hart caused the post–2003 harm for which Bristol can state facts.

Therefore, like the trial court, we conclude that Complaint 2 fails to state facts upon which it could be concluded that Osman's advice while at Holland & Hart caused the harm Bristol allegedly suffered when it considered filing suit in 2004. In addition, neither Complaint 2 nor Complaint 4 states facts susceptible of proof upon which it could

be concluded that Bristol, in fact, suffered any other harm.

### 4. Osman's Move to Dorsey & Whitney

We reject Bristol's argument that because there was a dispute about whether Dorsey & Whitney took over from Holland & Hart with regard to the infringement claim against Basic, the trial court erred when it dismissed Complaint 2 for failure to state a claim. When ruling on Holland & Hart's motion, the trial court was required to assume that each of the allegations in Complaint 2 was true. Complaint 2 alleged that after Osman moved to Dorsey & Whitney, Osman, and two other Dorsey & Whitney attorneys served as its counsel regarding the infringement claims, were negligent in that role, and caused Bristol harm with regard to the infringement claims. The court did not err when it accepted Bristol's allegations as true.

### 5. Intervening Cause

We also reject Bristol's contention that the trial court concluded that Osman's negligence in 2003 was an intervening or supervening cause. We find no such ruling in the court's order, nor do we find those terms or theories in *Brown* and *Luttgen,* the cases upon which the court relied.

We do not hold that an attorney's failure to advise a client of the doctrine of laches before the rebuttable presumption of laches arises could never be malpractice. However, in this case, Bristol has not sufficiently alleged that but for the inadequacies in Osman's advice while at Holland & Hart, it would not have suffered the harm it alleges.

Accordingly, we conclude that the trial court did not err when it concluded that Complaint 2 failed, as a matter of law, to allege facts which, if true, could establish causation.

### III. Motions to Amend

Bristol contends that the trial court erred when it denied Bristol's motion to amend its complaint to allege that Basic's laches defense became viable before the six-year presumption arose, as reflected in Complaint 5. It further contends that the trial court erred

when it denied Bristol's motion to file Complaint 5 to state a claim that Holland & Hart was negligent when it first filed for the patent. We disagree.

## A. Law

■ The decision to allow amendment of a complaint is in the sound discretion of the trial court, and will only be overturned for an abuse of discretion. When the trial court denies leave to amend under the doctrine of futility, the appellate review is de novo. Whether to allow amendment depends on the facts and circumstances of each case. *Benton v. Adams*, 56 P.3d 81, 85 (Colo.2002).

■ A trial court may properly deny leave to amend when the proposed amendment is in bad faith, would cause undue delay, would unduly prejudice the other party, is the result of repeated failures to cure deficiencies in the pleadings, or would be futile. *Benton*, 56 P.3d at 85. When the plaintiff raises wholly new issues in the proposed amended complaint, the plaintiff must provide "an acceptable reason for the delay in bringing its proposed claims." *Polk v. Denver Dist. Court*, 849 P.2d 23, 27 (Colo. 1993).

■ The doctrine of futility justifies denying the amendment when the amendment would not survive a motion to dismiss, merely restates the same facts as the original complaint, or reasserts a claim already dismissed by the trial court. *Benton*, 56 P.3d at 86–87. "[T]he trial court does not abuse its discretion when it denies a motion to amend which is futile." *Conrad v. Imatani*, 724 P.2d 89, 94 (Colo.App.1986). However, the trial court should allow amendment of the complaint when it will cure a deficiency that otherwise would justify dismissal. *Smith v. Mills*, 123 Colo. 11, 14, 225 P.2d 483, 485 (1950).

## B. Analysis

Here, the trial court declined to accept Complaint 3 because it was not submitted by way of motion to amend; Bristol included it as part of its response to defendants' motion to dismiss.

In addition, when Bristol filed its motion for leave to file Complaint 5, it modified the two then existing claims for relief and added a third claim for relief. In its response to Bristol's motion, Holland & Hart argued that Complaint 5 contained allegations that should have been included in the original complaint and that the new allegations were futile.

The trial court denied Bristol's motion to amend the complaint on the ground that Bristol was merely trying to resurrect issues already dismissed with prejudice. As to the new issues, Bristol "presented no evidence, or even offered any convincing argument, explaining why these new claims could not have been asserted in the eight months and two complaints between when this case was first filed and the date of the subject motion to amend." The trial court rejected Bristol's subsequent attempt to file Complaint 6 for the same reasons.

■ The trial court's denial of Bristol's motion to amend its complaint was not an abuse of discretion. Bristol filed its original complaint on January 24, 2005, and its motion to file Complaint 5 seven months later. Bristol offered no explanation as to why it could not have brought those claims seven months earlier. If the claims in Complaint 5 were attempts to correct the original claims to survive dismissal, the trial court was within its discretion to deny those amendments because Bristol was seeking to resuscitate claims already dismissed with prejudice. If the claims were new, the trial court's denial of leave to amend was proper because Bristol provided no explanation as to why it did not present the claims earlier. Moreover, as we noted in Section II(D)(3) above, the harm alleged was hypothetical.

## C. Conclusion

Therefore, we conclude that the trial court did not abuse its discretion when it denied Bristol's motions to amend its complaint.

## IV. Motion to Clarify

Bristol finally contends that the trial court erred when it refused to clarify its October 5, 2005 ruling.

On July 27, 2005, the trial court dismissed the claims against Holland & Hart with prejudice and declined to accept Complaint 4. At that time, the complaint of record was Complaint 2, and the order of dismissal pertained to Complaint 2 alone.

After the July 27, 2005 order, Bristol filed a motion to permit it to file Complaint 5. This version of the complaint added the malpractice claim against Holland & Hart and modified Bristol's other claims to state that laches had become a viable defense during Holland & Hart's representation of Bristol. The trial court denied Bristol's motion on October 5, 2005. The order did not dismiss the claim Bristol sought to add in Complaint 5; it merely denied leave to amend. The court explained that Bristol could not resuscitate claims that had previously been pled and dismissed, and as to the new claims, Bristol presented no explanation justifying their inclusion at such a late date.

We conclude that the trial court did not abuse its discretion in declining to clarify its October 5, 2005 order, because the order needed no clarification. The trial court dismissed Complaint 2, with the original two claims for relief, and it denied leave to add the third claim for relief contained in Complaint 5. The court did not dismiss Complaint 5, as it was not properly before the court for dismissal.

The judgment and order are affirmed.

Judge RUSSEL and Judge NEY * concur.