24CA0580 Guillot v Salter 02-13-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0580
Jefferson County District Court No. 23CV30169
Honorable Phillip J. McNulty, Judge

Ron Guillot,

Plaintiff-Appellant,

v.

Hal Christopher Salter,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE KUHN
Welling and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 13, 2025

Bohn Aguilar, LLC, Armando Y. Aguilar, Lakewood, Colorado, for Plaintiff-Appellant

No appearance for Defendant-Appellee

¶ 1     Plaintiff, Ron Guillot, appeals the trial court's judgment against him in his action to recover on a promissory note against defendant, Hal Christopher Salter.[1]  We reverse and remand for additional proceedings.

## I.     Background

¶ 2     Salter was the CEO and founder of Allegro Multimedia, Inc., which — when facing financial difficulties and trying to secure additional funding — borrowed $30,000 from Guillot through a promissory note.[2]  Salter executed the note on Allegro's behalf in 2011, and it was due one year later.  Allegro continued to face business struggles after the repayment period ended, so it attempted to restructure the note, which remained unpaid.  Salter and Guillot agreed to modify the loan in late 2013, reducing the interest rate and restructuring the repayment terms.  The loan modification agreement required Salter to personally sign the agreement and secure it with a life insurance policy on himself.

---

[1] Salter did not appear or file an answer brief in this appeal.

[2] Guillot was not Allegro's only creditor, the company had approximately 300 investors and $10 million in investments.

1

Allegro eventually failed, went out of business, and defaulted on Guillot's loan.

¶ 3 Although Guillot made annual collection attempts, Salter failed to make payments on the restructured loan. However, he continued making payments on the life insurance policy securing the note for the policy's ten-year term. During those ten years, he and his wife both faced serious health concerns but survived. However, when the time came to renew the life insurance policy in 2023, Salter refused because of the expected dramatic increase in its cost.

¶ 4 Guillot then filed the underlying lawsuit in this case, seeking to recover on the promissory note. Salter, appearing pro se, filed an answer, which did not raise laches as an affirmative defense. Almost two months later, Salter filed a second answer without obtaining leave of court. That answer briefly mentioned laches as an affirmative defense. Following a bench trial, the court found that Salter breached his contract to repay the loan but applied the doctrine of laches and entered judgment against Guillot.

## II.    Analysis

¶ 5    Guillot contends that the trial court erred by (1) applying the doctrine of laches even though Salter had waived it; (2) applying the doctrine of laches despite Salter's failure to properly plead it; (3) raising the doctrine of laches sua sponte; and (4) finding that Salter had proved laches despite presenting insufficient evidence. We first set forth the standard of review and then address his first three issues challenging how the defense of laches was raised before turning to his last contention challenging the application of the doctrine.

### A.    Applicable Law and Standard of Review

¶ 6    Laches is an equitable defense that will bar an award of damages. *Bristol Co., LP v. Osman*, 190 P.3d 752, 755 (Colo. App. 2007). "The essential element of laches is unconscionable delay in enforcing a right under the circumstances, usually involving a prejudice to the one against whom the claim is asserted." *Hickerson v. Vessels*, 2014 CO 2, ¶ 12 (quoting *Loveland Camp No. 83, W.O.W. v. Woodmen Bldg. & Benevolent Ass'n*, 116 P.2d 195, 199 (Colo. 1941)). "The elements of laches are: (1) full knowledge of the facts; (2) unreasonable delay in the assertion of [an] available remedy; and

(3) intervening reliance by and prejudice to another." *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 73 (Colo. 1996) (quoting *Manor Vail Condo. Ass'n v. Town of Vail*, 604 P.2d 1168, 1170 (Colo. 1980)).

¶ 7    "As an equitable defense, [laches] is committed to the sound discretion of the trial court, and the trial court decision is reviewed for abuse of discretion." *Bristol*, 190 P.3d at 755. "A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, unfair, or based on a misapplication of the law." *Black v. Black*, 2020 COA 64M, ¶ 118.

¶ 8    To the extent that Guillot's claims turn on the sufficiency of the evidence, we "must review *all* of the relevant evidence de novo in the light most favorable to the verdict to determine whether the evidence sufficiently supports the [trial court's] decision." *Northstar Project Mgmt., Inc. v. DLR Grp., Inc.*, 2013 CO 12, ¶ 14 (citing *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005)). As long as this standard is satisfied, we "will disturb [a trial court's] findings of fact only if they are clearly erroneous." *Lawry v. Palm*, 192 P.3d 550, 558 (Colo. App. 2008).

### B. Preservation of Arguments About How the Doctrine of Laches Was Raised

¶ 9     Guillot first challenges the trial court's application of the doctrine of laches to this matter, asserting that Salter hadn't properly raised the defense. Specifically, Guillot argues that (1) Salter waived laches; (2) Salter improperly pleaded laches; and (3) the trial court could not raise laches sua sponte. We begin by addressing preservation.

¶ 10     "To properly preserve an argument for appeal, the party asserting the argument must present 'the sum and substance of the argument' to the district court." *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (quoting *Madalena v. Zurich Am. Ins. Co.*, 2023 COA 32, ¶ 50). Guillot makes several arguments in support of his claim that he preserved these appellate contentions. We are not persuaded.

¶ 11     Guillot did not raise either the waiver or impermissible pleading argument to the trial court. He starts by arguing that Salter didn't raise laches as an affirmative defense in his first answer and didn't properly amend his answer to raise it. But Guillot did not file a motion to strike the amended answer when it

5

was filed or otherwise indicate to the trial court that he thought it was untimely or otherwise prohibited by the rules of procedure.

¶ 12    The issue of laches as one of Salter's defenses arose again at trial. As Salter was attempting to introduce medical records, Guillot's counsel objected to their relevance. The trial court addressed the objection by saying, "[The evidence] might be relevant to the defense of laches, which was properly raised." At this juncture, Guillot did not object to the trial court's statement that laches was properly raised. And his closing argument is devoid of any argument that laches hadn't been properly raised. To the contrary, Guillot's counsel argued why laches didn't substantively apply.

¶ 13    Relying on *In re Estate of Ramstetter*, 2016 COA 81, ¶ 71 n.7, Guillot contends that his arguments are nonetheless preserved for appeal because the trial court addressed the ultimate issue of laches, which automatically preserved his argument. It's true that we will review issues raised by a trial court to which a party couldn't have objected earlier. *See Gravina Siding & Windows Co. v. Gravina*, 2022 COA 50, ¶ 31. But *Ramstetter* didn't change the traditional requirement of appellate preservation that "[i]n civil

6

cases, arguments never presented to, considered by, or ruled upon by a district court may not be raised for the first time on appeal." *Gebert*, ¶ 25.

¶ 14 Guillot's arguments that Salter failed to properly plead laches and failed to properly amend his answer were never presented to, considered by, or ruled upon by the trial court. And because Guillot never made these arguments to the trial court — even after the court made clear that it considered the issue of laches was properly before it — *Ramstetter*'s pronouncement that "where a trial court addresses an argument, whether that argument was preserved is moot" does not apply here. *See Ramstetter*, ¶ 71 n.7. Thus, Guillot's first two arguments are unpreserved, and we decline to consider them further. *See Gebert*, ¶ 25.

¶ 15 Guillot next contends that the trial court raised laches sua sponte. We disagree with his characterization of the trial court's actions. As noted above, the trial court said that laches "*was properly raised*" when it addressed Guillot's evidentiary objection. Regardless of whether that statement was correct, it indicates that the trial court was referring to a defense it believed Salter had properly raised, not one it was raising on its own at that time. And

7

because Guillot did not preserve his argument that laches was improperly pleaded, this argument meets the same fate as those other arguments. We thus decline to consider this argument further. *See Gebert,* ¶ 25.

### C. Sufficiency of the Evidence

¶ 16 Guillot argues that the trial court erred by concluding that Salter proved laches because Salter did not present any evidence to support the defense. Guillot specifically directs his argument to the last two elements of laches: an "unreasonable delay in the assertion of [an] available remedy" and "intervening reliance by and prejudice to another." *Bijou,* 926 P.2d at 73 (quoting *Manor Vail Condo. Ass'n,* 604 P.2d at 1170). We address these elements in turn.

### 1. Unreasonable Delay

¶ 17 Guillot directs the first portion of his unreasonable delay argument at whether the trial court correctly applied the law. He argues that, as a matter of law, there was no unreasonable delay here because the claim was brought within the statute of limitations.

¶ 18 We disagree with this broad argument because laches is an equitable, not a legal, defense. Thus it "is not dependent upon the

statute of limitations." *Cullen v. Phillips*, 30 P.3d 828, 834 (Colo. App. 2001); *see also Hickerson*, ¶ 16 ("[L]aches is available as a defense in some circumstances to shorten the period for filing a claim, even though the claim has been timely filed within a legislatively prescribed statute of limitations period."). However, that does not mean that the statute of limitations is irrelevant, as the court should still consider the timeliness of filing a complaint within the statute of limitations period in its assessment of whether there was an unreasonable delay. *See Cullen*, 30 P.3d at 834. Indeed, the legislatively prescribed period is evidence that the court should consider in determining whether the delay was unreasonable. *See Hickerson*, ¶ 13 ("The modern tendency is to look with favor upon statutes of limitation, which are considered wise and beneficent in their purpose and tendency, . . . and are held to be rules of property vital to the welfare of society . . . ." (quoting *Van Diest v. Towle*, 179 P.2d 984, 989 (Colo. 1947))) (alterations in original); *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1230 (Colo. App. 2000) ("[A] court 'will usually grant or withhold relief in analogy to the statute of

limitations relating to actions at law of like character.'" (quoting *Brooks v. Bank of Boulder*, 911 F. Supp. 470, 477 (D. Colo. 1996))).

¶ 19 To be sure, a court applying laches to defeat a claim before the statute limitations has run should carefully consider the facts justifying departure from the statutory period. After all, "[l]aches requires 'such unreasonable delay in the assertion of and attempted securing of equitable rights as to constitute in equity and good conscience a bar to recovery.'" *Hickerson,* ¶ 12 (quoting *Loveland Camp No. 83*, 116 P.2d at 199). In other words, a simple delay is not enough. Instead, the circumstances must rise to the level of an "unconscionable delay" to justify application of the doctrine. *Id.* (quoting *Loveland Camp No. 83*, 116 P.2d at 199). So while we disagree with Guillot that laches fails as a matter of law within the statutory limitations period, we agree that the limitations period is a relevant factor that the court should consider.

¶ 20 Guillot next argues that Salter presented insufficient evidence from which the trial court could have found an unreasonable delay in this case. While the court made an ultimate conclusion about this element, it did not articulate factual findings in support of that conclusion.

¶ 21    The trial court found that the statute of limitations had not yet expired when this case was filed. Not only had it not expired, but it hadn't even begun to run at the time Guillot filed suit, as the loan itself had a maturity date of November 1, 2034. Nevertheless, the trial court concluded that "this was an incredibly unreasonable delay." The only fact the court found in support of this conclusion was that there were no payments made on the loan. But the court didn't address the testimony regarding the parties' course of conduct, the ongoing and routine requests for payment, and the extensions Guillot says he granted. And it did not address the apparent precipitating event for this lawsuit: Salter's failure to renew the life insurance policy that acted as security for the note.

¶ 22    So while we understand that the trial court concluded the delay here was "incredibly unreasonable," we don't understand why or how that conclusion is supported by this record. The underlying factual findings for its decision are critical given that the note had not yet matured, and the statute of limitations had not yet even started to run.

¶ 23    Guillot, for his part, asks us to essentially weigh this evidence and conclude that the trial court reached the wrong decision.

11

That's not our role. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021 COA 114, ¶ 50 ("It's the trial court's sole province to resolve factual issues, determine witness credibility, weigh evidence, and make reasonable inferences from that evidence."). But the trial court also didn't make enough findings here for us to understand its reasoning or "permit meaningful appellate review." *Argo v. Hemphill*, 2022 COA 104, ¶ 52. "In the absence of sufficient findings of fact and conclusions of law to permit appellate review, the proper remedy is a remand to the trial court with directions to make the requisite findings." *Mission Viejo Co. v. Willows Water Dist.*, 818 P.2d 254, 261 n.12 (Colo. 1991).

### 2. Intervening Reliance and Prejudice

¶ 24    We turn next to Guillot's challenge to the last element of laches. He argues that Salter provided no evidence demonstrating intervening reliance by and prejudice to himself. *See Bijou*, 926 P.2d at 73. However, we again conclude that the trial court's ruling contains insufficient findings for us to review.

¶ 25    In ruling on intervening reliance by and prejudice to Salter, the trial court said,

> Intervening reliance by and prejudice to the Defense. And the Court finds there is incredible prejudice to the Defense over the last [ten] years of this and that is clear from the record in this case and the attempts by Plaintiff[3] to mollify other creditors and get through this process with just keeping a roof over his head.

¶ 26 The finding of prejudice, necessary to prove laches, "may be either economic or evidentiary." *Bristol*, 190 P.3d at 755. "Economic prejudice to a defendant may include liability for greater damages or the loss of monetary investment that a timelier lawsuit would likely have prevented." *Id.* Evidentiary prejudice, on the other hand, "may include a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of witnesses, or the adverse effect that the passage of time has on witnesses' memories of relevant events." *Id.*

¶ 27 While we surmise that the trial court relied on economic prejudice, we cannot be certain of this. Additionally, the court's ruling does not set forth how Guillot's actions caused "incredible

---

[3] It is unclear whether this is a misstatement and should be a reference to Salter, or whether the court is in fact referring to Guillot.

prejudice" to Salter or what the court relied on to determine intervening reliance by Salter based on Guillot's actions.

¶ 28     In essence, we are again missing the underlying "findings necessary to permit meaningful appellate review," *Argo*, ¶ 52, and we must remand for the trial court to make those findings, *see Mission Viejo Co.*, 818 P.2d at 261 n.12, if it is able to do so on these facts.

## III.   Disposition

¶ 29     The judgment is reversed.  The case is remanded to the trial court for additional findings on whether Guillot unconscionably and unreasonably delayed bringing this suit and whether there was intervening reliance by and prejudice to Salter as a consequence of those actions.  The trial court may conduct whatever further proceedings consistent with this opinion it finds appropriate on remand.

JUDGE WELLING and JUDGE SCHUTZ concur.